359 P.2d 511

Laurence F. FLOREK, Claimant-Appellant,

v.

SPARKS FLYING SERVICE, INC., Employer-Respondent.

No. 8925.

Supreme Court of Idaho.

Feb. 14, 1961.

Marcus & Evans, Boise, for appellant.

Richards, Haga & Eberle, Boise, for respondent.

John Gunn, Legal Counsel for Employment Security Agency.

KNUDSON, Justice.

This is an action for unemployment security benefits. Appellant, Laurence F. Florek, is an airplane pilot and during his base period year of 1958 was intermittently

employed by respondent Sparks Flying Service, Inc., to perform a variety of services, consisting of piloting chartered flights, giving student flying instructions and spraying or crop dusting agricultural crops. For his services rendered in piloting chartered flights and giving student flying instructions he was paid on an hourly basis and his income for such services has been properly considered in determining the total benefits available to appellant.

During said base period appellant's largest remuneration from respondent was for services rendered in spraying or dusting agricultural crops. This work consisted of flying an aircraft, equipped with mechanical apparatus to spray chemicals and insecticides, at extremely low altitudes and within a few feet of the crop being treated. For such services appellant was paid on a commission basis.

The Industrial Accident Board concluded that the spraying or dusting of agricultural crops by whatever means is agricultural labor as that term is defined in the Employment Security Law, and that the Employment Security Agency properly excluded such work from consideration in determining appellant's available insurance reserve for unemployment compensation and entered its order accordingly. It is from said order that this appeal is taken.

The amount received by appellant for services rendered during the base period is not in controversy. The essential issue presented is whether appellant's service while engaged in spraying or crop dusting is covered employment within the provisions and meaning of the Employment Security Law of this state.

The evidence discloses that all negotiations had and agreements made with the farmers regarding the dusting of their crops were carried on by persons other than appellant who are referred to as flight operators; that the flight operators' field man directs appellant as to which field to spray; that appellant seldom contacts the farmer other than to consult him regarding obstructions in and about the field to be sprayed; appellant makes no inspection of the crop to be treated, nor does he prescribe the chemicals or insecticides to be used. Appellant contends that since his services consisted almost exclusively of flying the airplane, which is a highly skilled profession, he was not engaged in agricultural labor while spraying or dusting a farm crop.

I.C. § 72–1316 defining "covered employment" under the Employment Security Law provides:

"Covered employment.—(a) The term 'covered employment' means an individual's entire service, including service in interstate commerce, performed by him for wages or under any

contract of hire, written or oral, express or implied, except—

" (1) Agricultural labor, as defined by section 72–1304; * * *"

The applicable provisions of I.C. § 72–1304 defining the term "agricultural labor" with which we are here concerned, are:

"Agricultural labor.—(a) The term 'agricultural labor' includes all services performed:

" (1) On a farm, in the employ of any person in connection with cultivating the soil, *or in connection with raising or harvesting any agricultural or horticultural commodity,* including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and furbearing animals and wildlife. * * *" (Emphasis supplied.)

The question presented is, did appellant, while engaged in spraying or crop dusting, perform services in connection with raising an agricultural commodity within the meaning of said § 72–1304?

In the interpretation of a statute the court's only concern is to ascertain and give effect to the legislative intent as expressed, irrespective of the wisdom, expediency or possible results. State v. Bunting Tractor Co., 58 Idaho 617, 77 P.2d 464; State ex rel. Capital Inv. Co. v. Lukens, 48 Idaho 357, 283 P. 527. Where the provisions of the statute are plain and unambiguous the words used must be given their common and ordinarily understood meaning.

The Idaho legislature, when enacting the Employment Security Law, deemed it proper and necessary to define the term "agricultural labor" and it is clear the legislature intended that, irrespective of the interpretation given to said term when used elsewhere, it shall, when used in connection with the Employment Security Law of this State, have the meaning ascribed to it under said law. I.C. § 72–1303 provides:

"Definitions.—As used in this act, unless the context clearly requires otherwise, the terms defined in the following sections 72–1304 to 72–1330, inclusive, shall have the meanings respectively ascribed to them."

Since agricultural labor as defined by said statute includes all services performed in cultivating the soil and *in raising* or harvesting the commodity it obviously embraces services rendered in every process and step taken and necessary to the production of a finished farm product. It therefore follows that spraying, dusting or otherwise treating a growing crop is as much agricultural labor as is irrigating and cultivating such crop. If the farmer personally used his airplane to spray or dust his own crop he undoubtedly would, while performing such work, be engaged in agri-

cultural labor as hereinbefore defined. Modern practices, conditions and requirements may differ from those formerly existing but the method employed, or equipment used to accomplish the work, does not change its nature.

■ In the instant case it is pointed out that appellant made no employment contract with the farmer whose crop he was spraying. Such a factor may in some cases be proper to consider, but we think that under a statute such as ours, whether labor is done directly for the farmer or by the employee of one engaged in spraying or dusting crops commercially is immaterial, and must be considered farm or agricultural labor if it is in fact such.

■ The fact that appellant is highly skilled as a pilot does not preclude him from engaging in farm or agricultural labor. A person whose general business or trade is covered by the Employment Security Law has the same right to engage in agricultural labor, and while so engaged is subject to the same law as a person who makes agriculture his exclusive occupation or business.

Appellant contends that the general character of the work for which the employee was hired, or is required to perform, is the test of whether the labor was performed in a covered employment or in an exempt employment. In support of this contention appellant cites Hubbell v. Perrault, 78 Idaho 448, 304 P.2d 1092. In that case the main issue was whether the employment in which claimant was engaged at the time of his injury was an "agricultural pursuit" within the meaning of the Workmen's Compensation Act. The term "agricultural pursuits" as used in said act is not defined by statute. We do not consider the reasoning and decision in that case as controlling in the instant case for the reason that we are here concerned with a different term (agricultural labor) which is specifically defined by statute. The cases of Dorrell v. Norida Land & Timber Co., 53 Idaho 793, 27 P.2d 960; Mundell v. Swedlund, 59 Idaho 29, 80 P.2d 13 and Maryland Casualty Co. v. Dobbs, Tex.Civ.App., 70 S.W.2d 751, cited by appellant are likewise not in point for the same reason. Nor are Meader v. Unemployment Comp. Div., 64 Idaho 716, 136 P.2d 984, 988; and In re Batt, 66 Idaho 188, 157 P.2d 547, in point for the reason that in each case the court had under consideration a statute of the then Unemployment Compensation Law which was substantially different than the statute here involved in that the statute there considered provided:

" * * * provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ *of any person or persons who operate a farm or farms only incidental to a principal occupation*

*or occupations* which would otherwise be termed covered employment within the meaning of this Act." (Emphasis supplied.) Laws 1941, c. 182, § 18–5(f).

The record does not disclose the extent to which respondent engaged in the work of crop dusting or spraying, however, the record does disclose that appellant's employment by respondent commenced on July 11, 1958, and his last assignment was December 10, 1958; that during the third and fourth quarters of 1958 appellant earned $908.13 performing crop dusting and spraying while during the same period he earned only $135.35 performing other services for his employer. These facts do not support a contention that crop dusting or spraying was merely an incidental service engaged in by appellant.

■ The meaning of the exception to our statute here under consideration is accordingly too clear, even under the rule of liberal construction, to permit us to hold that appellant in this case comes within the definition of covered employment under the Employment Security Act. Relief, if any, in similar cases must come from the legislature. We cannot usurp its function.

■■ Appellant claims that the Board erred in not holding I.C. § 72–1316(a) (1) unconstitutional, but the assignment does not specify the constitutional provision claimed to be violated by said statute; however, in the argument contained in appellant's brief it is contended that no justification exists for classifying "agricultural labor" as exempt employment under said statute. We fully recognize and adhere to the proposition that classifications made by the legislature under a tax measure or in exercise of police power must be founded on some real and substantial distinction. The Employment Security Law was enacted pursuant to a declared public policy in an attempt to solve a great and pressing problem of national and state concern arising from involuntary unemployment. I.C. § 72–1302. The legislature, in its considered judgment, has classified those who are to receive benefits under said law and those who shall be excepted therefrom. Judicial inquiry does not concern itself with the accuracy as to the legislative finding, but only with the question of whether it so lacks any reasonable basis as to be arbitrary. *Standard Oil Co. v. City of Marysville,* 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856.

Statutory classification as is here questioned has been considered and upheld by the highest court of our country. *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 505, 57 S.Ct. 868, 81 L.Ed. 1245. See *Chamberlin Inc. v. Andrews,* 271 N.Y. 1, 2 N.E.2d 22, 106 A.L.R. 1519; 12 Am.Jur. 140; 12 Am.Jur. 207; 12 Am.Jur. 270.

■ The legislative action here involved is within the scope of police power, and questions as to its wisdom and propriety.

are not for determination by the courts. We find nothing in the statute here challenged which is so arbitrary, unfounded or unreasonable as to violate any provision of our Constitution.

The order of the Industrial Accident Board is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, Mc-QUADE and McFADDEN, JJ., concur.