721 P.2d 198

Donald L. DULLENTY,
Plaintiff-Appellant,
v.
ROCKY MOUNTAIN FIRE AND
CASUALTY COMPANY,
Defendant-Respondent.

No. 15889.
Supreme Court of Idaho.
June 4, 1986.
Rehearing Denied July 11, 1986.

Michael J. Verbillis, Coeur d'Alene, attorney for plaintiff-appellant.

Charles W. Hosack, Coeur d'Alene, for defendant-respondent.

Kenneth B. Howard, Jr., Coeur d'Alene, for amicus curiae Idaho Trial Lawyers Assn.

M. Allyn Dingel, Jr. and Lawrence G. Sirhall, Jr. (argued), Boise, for amicus curiae State Farm Mut. Auto. Ins. Co.

SHEPARD, Justice.

This is a review of a decision of the Court of Appeals which reversed a summary judgment granted by the district court against plaintiff-appellant Dullenty. Dullenty had brought an action against his insurance carrier under the provisions of an automobile policy relating to uninsured motorist coverage. We reverse the Court

of Appeals and reinstate the summary judgment granted by the district court.

The facts are stipulated and we are presented solely with a question of law. Dullenty owned three motor vehicles, a 1966 International truck, a 1974 Chevrolet Blazer, and a 1979 Subaru. Only the International truck was insured by respondent Rocky Mountain Fire and Casualty Company. The Blazer and the Subaru were insured by United Pacific Reliance Insurance Company. The automobile liability policy issued by Rocky Mountain Fire and Casualty Company contained an uninsured motorist coverage supplement. The automobile liability policy covering the Blazer and the Subaru issued by United Pacific Reliance Insurance Company also contained uninsured motorist coverage.

While Dullenty was operating the Chevrolet Blazer he was injured in a collision with an automobile owned and operated by an uninsured motorist. Dullenty filed a claim with Rocky Mountain, asserting benefits under the uninsured motorist supplement to the policy issued by Rocky Mountain. Based on exclusionary language contained in the policy, Rocky Mountain denied Dullenty's claim. Dullenty then filed suit in district court. The district court held that the exclusion was unambiguous and entered summary judgment against Dullenty.

That decision was appealed to the Idaho Court of Appeals who reversed, holding that the exclusionary language relied on by Rocky Mountain violated public policy. This Court granted a review of the decision of the Court of Appeals. State Farm Mutual Automobile Insurance Company was granted leave to appear amicus curiae. The sole question presented is whether as held by the Court of Appeals, the specific exclusion relied upon by Rocky Mountain which denies coverage in these circumstances, is void as against public policy. We hold the exclusionary language of the policy is not inconsistent with public policy, and hence reverse the decision of the Court of Appeals.

■ The district court found that the language of the Rocky Mountain policy was clear and unambiguous and that no coverage was afforded thereunder to Dullenty under the instant circumstances. We agree. In that portion of the policy dealing with uninsured motorist coverage, a number of exclusions appear, one of which provides:

"This supplement [uninsured motorist coverage] does not apply:

. . . .

"(c) to any other vehicle or automobile owned by or furnished for regular use to the named insured and while resident of the same household, his spouse and relatives of either...."

We affirm the decision of the district court that such language excludes uninsured motorist coverage when Dullenty is injured while occupying a vehicle owned by or furnished for the regular use of Dullenty, but which is not described in the declaration section of the policy. It is undisputed that the Chevrolet Blazer Dullenty was driving at the time of the accident in question was not described in the declaration section of the Rocky Mountain policy, and was owned by Dullenty. Under the somewhat inartfully drawn language of the policy, it is arguable that Dullenty was insured against damage caused by an uninsured motorist while he, Dullenty, was an occupant of a motor vehicle owned by someone outside the Dullenty household, while Dullenty was a pedestrian, or while Dullenty was sitting on his front porch. However, the Rocky Mountain policy unambiguously excludes uninsured motorist coverage while Dullenty is occupying a vehicle owned by him and not described in the policy.

The decision of the Court of Appeals, *Dullenty v. Rocky Mountain Fire and Casualty Company,* 107 Idaho 777, 692 P.2d 1209 (1984), focused on its view that the Rocky Mountain policy was "repugnant" to public policy as expressed in our statutes because the policy purported to limit its uninsured motorist coverage by excluding injuries sustained at the hands of an uninsured motorist while the insured

was occupying vehicles owned by the insured's household but not covered by the Rocky Mountain policy. Therein the Court of Appeals relied heavily on its decision in *Hammon v. Farmers Insurance Group,* 107 Idaho 770, 692 P.2d 1202 (1984), issued but a few days before its decision in *Dullenty.*

In *Hammon,* the Court of Appeals was presented with the following circumstances. The Hammons owned two vehicles, both of which were insured by separate policies issued by Farmers Insurance Group. Each policy contained uninsured motorist coverage. Each policy contained a requirement that if there was a "hit and run" type of accident and an unidentified tortfeasor, there must have been a physical contact for the uninsured motorist provision to be effective. Secondly, each policy provided that, as here, the uninsured motorist coverage would not be effective while the insured was occupying a vehicle owned by the Hammon household, but not listed as a described vehicle in the particular policy.

The Hammons were injured when their vehicle was allegedly forced off the road by another vehicle, but there was no physical contact. Therefore, the first question to be decided by the Court of Appeals was whether the requirement of physical contact was a valid restriction on the otherwise uninsured motorist coverage, or whether such requirement was void as against public policy. The Court of Appeals held that the physical contact requirement was contrary to public policy as enunciated by I.C. § 41–2502. Only thereafter did the Court of Appeals find it necessary to consider the coverage question at issue in the instant case, *i.e.,* the policy language excluding uninsured motorist coverage when the insured is occupying a vehicle owned by the family household but not described in the policy.

The court held that such restrictions on otherwise uninsured motorist coverage are repugnant to I.C. § 41–2502 stating, "The uninsured motorist coverages in both policies must be deemed to protect the Ham-

mons as occupants in either of their vehicles, as pedestrians, or in any other circumstance where they suffer injury caused by an uninsured motorist." Thus, the Court of Appeals held that consistent with *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 565 P.2d 564 (1977), that the uninsured motorist coverage of both policies could be "stacked" and the Hammons thereby recover under both policies.

This Court also granted review in *Hammon* and reversed the decision of the Court of Appeals. This Court held, "Because we hold that the physical contact requirement is not void as contrary to the Idaho uninsured motorist statute, we find it unnecessary to address the stacking issue." Hence, this Court's decision in *Hammon* provides no guidance on the issue presented in the instant case, *i.e.,* whether the policy provision excluding uninsured motorist coverage while insured is occupying a vehicle owned by the family household but not described as a covered vehicle in the policy, is or is not void against public policy as was held by the Court of Appeals in its decisions in *Hammon* and *Dullenty.*

The decision of the Court of Appeals in the instant case indicated that the question presented is virtually identical to that in the Court of Appeals' decision in *Hammon v. Farmers Insurance Company, supra,* and that for the reasons set forth in *Hammon,* the Court of Appeals reversed the summary judgment in the instant case. As above noted, this Court reversed the decision of the Court of Appeals in *Hammon,* however the resolution of the validity of the exclusion at issue here was found by the Supreme Court in its decision in *Hammon* as not necessary to be resolved.

The Court of Appeals' decision in *Hammon* indicated a split among the various jurisdictions on the question presented, and that the numerical majority of cases from other jurisdictions have agreed with the view adopted by the Court of Appeals.

The Court of Appeals in *Hammon* held, "The uninsured motorist coverages in both policies must be deemed to protect the Hammons as occupants in either of their

vehicles, as pedestrians, or in any other circumstance where they suffer injury caused by an uninsured motorist." We need not decide today whether the Court of Appeals' decision was correct in the above broad statement. We are not concerned here with the question of whether an uninsured motorist policy provides coverage in the event that a named insured, while a pedestrian, is struck by an uninsured motorist; whether the uninsured motorist policy language covers an insured who was sitting on his front porch is struck by an uninsured motorist; or whether the uninsured motorist policy language affords coverage to an insured while he is occupying any motor vehicle which is not owned by or furnished for the regular use of he or a member of his household. Arguably the policy language can be so interpreted. However, the sole question presented today is whether the uninsured motorist policy language provides coverage to an insured while he is occupying a vehicle which he owns, but is not described in the policy, and is struck by an uninsured motorist. Even more pointedly the question becomes whether under such circumstances the clause in the policy purporting to exclude such coverage is void as against public policy.

In the Court of Appeals' decision in *Hammon*, it is asserted that the *liability* portion of an automobile insurance policy protects third persons from damage caused by an insured while driving a named motor vehicle. That assertion is, of course, overly broad. The third party is not "protected" by the liability policy but rather it is the tortfeasor owner-operator of the named vehicle who is protected against financial loss when and if a damaged third party makes a claim against the insured owner-operator. That distinction is not merely one of semantics, albeit it is clear that the legislative intention was to require a motor vehicle to be operated only when its owner-operator possessed liability insurance in at least a minimum amount.

The Court of Appeals' decision then asserted that such liability insurance

protecting the owner-operator against financial loss was operative in protecting third persons regardless of what motor vehicle the damaged third person might have been occupying, or whether or not the third party was a pedestrian, *or in any other circumstance* when the third person was injured by the operation of the insured motor vehicle. With that assertion there can be no quarrel since such was the policy coverage and the obvious legislative intent. The Court of Appeals held that any attempt by an insurance carrier to exclude coverage if while owning-operating the named motor vehicle the operator struck a pedestrian, crashed into a house, or any other circumstance involving the operation of the named motor vehicle would be void. Again we agree. The Court of Appeals then held that uninsured motorist coverage "reciprocates" liability coverage and hence "by a parity of reasoning" uninsured motorist coverage is statutorily mandated to also afford coverage to an insured whenever and wherever the insured is injured by an uninsured vehicle. We disagree.

We deem the legislative intent in the field of automobile insurance to be relatively clear. It is the public policy of this state that any owner or operator of a motor vehicle, with certain self-insured exceptions, purchase automobile *liability* insurance. Therein it is contemplated that if a third party suffers damage by reason of the operation of that specific motor vehicle, the owner or operator of the vehicle is insured against loss by reason of a recovery by the injured third party. While obviously such a scheme contemplates insurance against a risk of such monetary loss on the part of the owner or operator of the insured vehicle, it carries out a further public policy of providing some protection to the general public who may be injured as a result of the operation of the named motor vehicle, by providing an assured fund from which a member of the general public may recover for at least part of his damage.

Further provisions of the statutory scheme provide that when a potential in-

sured contemplates purchasing *liability* insurance from a carrier, that the carrier must *offer* the potential insured as an addition to or supplement to the liability policy on the specific motor vehicle, uninsured motorist coverage, *i.e.,* insurance against the risk of damage to the insured caused by a third party uninsured tortfeasor. I.C. § 41–2502.

It is further provided that for the purpose of protection for those who purchase automobile insurance, that policies must be uniform in form and content, and must be approved by the director of the Department of Insurance. There is no indication in the instant case that the policy at issue does not conform to the above strictures, and hence we assume that the policy is in a form and content approved by the commissioner of insurance.

■ Although the Court of Appeals held otherwise, we find nothing in the legislative language that mandates that when a carrier offers uninsured motorist coverage to a potential insured, that it must do so in language which covers the insured in *all circumstances* wherein the insured suffers damage at the hands of an uninsured motorist, or that policy language which attempts to limit the coverage to *less than all circumstances* is void as against legislative public policy.

There is, of course, respectable authority in a large number of jurisdictions holding to the contrary. Likewise there is respectable authority, albeit in the lesser number of decisions, which agrees. We have reviewed the opinions of the courts of other jurisdictions which deal with the issue presented in the case at bar. The clear numerical majority of such courts have reached the same result as the Court of Appeals in the instant case. *See State Farm Automobile Insurance Co. v. Reaves,* 292 Ala. 218, 292 So.2d 95 (1974); *Mullis v. State Farm Mutual Automobile Ins. Co.,* 252 So.2d 229 (Fla.1971); *Kau v. State Farm Mut. Auto. Ins. Co.,* 58 Hawaii 49, 564 P.2d 443 (1977); *Nygaard v. State Farm Mutual Automobile Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974); *Lowery v. State Farm Mutual Automobile Ins. Co.,* 285 So.2d 767 (Miss.1973); *Shepherd v. American States Ins. Co.,* 671 S.W.2d 777 (Mo.1984); *Jacobson v. Implement Dealers Mut. Ins. Co.,* 196 Mont. 542, 640 P.2d 908 (1982); *State Farm Mutual Automobile Ins. Co. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971); *Fernandez v. Selected Risks Ins. Co.,* 163 N.J.Super. 270, 394 A.2d 877 (1978); *Chavez v. State Farm Mutual Automobile Ins. Co.,* 87 N.M. 327, 533 P.2d 100 (1975); *Bankes v. State Farm Mutual Automobile Ins. Co.,* 216 Pa.Super. 162, 264 A.2d 197 (1970); *Hogan v. Home Insurance Co.,* 260 S.C. 157, 194 S.E.2d 890 (1973); *Federated American Ins. Co. v. Raynes,* 88 Wash.2d 439, 563 P.2d 815 (1977). A smaller number of courts have reached a contrary result. *See Holcomb v. Farmers Insurance Exchange,* 254 Ark. 514, 495 S.W.2d 155 (1973); *MFA Insurance Companies v. Whitlock,* 572 S.W.2d 856 (Ky.1978); *Beliveau v. Norfolk & Dedham Mut. Fire Ins.,* 120 N.H. 73, 411 A.2d 1101 (1980).

Sheer numbers of decisions of other jurisdictions one way or the other on any given question are of course not controlling on this Court, and the decisions are persuasive only as they contain analysis and reasoning which recommends itself to this Court.

Unfortunately, few of the opinions of other courts which have addressed the issue, regardless of the result reached, contain what we perceive as any in-depth analysis or reasoning. Most of the opinions which hold that exclusionary clauses to otherwise uninsured motorist coverage are void as against a statutory public policy, merely state that as a fact, *i.e.,* "everyone knows" that the legislature in enacting uninsured motorist statutes intended that an insured is covered when injured by an uninsured motorist in all circumstances, whether the insured be riding in the named vehicle, in an unnamed but owned vehicle, while occupying a vehicle not owned by the household, while a pedestrian, while sitting on his front porch, while riding a camel or horse, or while bouncing on a pogo stick.

On the other hand, opinions holding such exclusionary clauses to be valid most often refer to the inequity of allowing a person who insures one vehicle with an insurance carrier to obtain a "free ride" by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he has paid no premium to the carrier. Some courts upholding the validity of such exclusionary clauses opine that rewarding a plaintiff who himself is operating an uninsured vehicle is contrary to legislative policy.

For cases presenting the various viewpoints, *see Aetna Insurance Company v. Hurst*, 2 Cal.App.3d 1067, 83 Cal.Rptr. 156 (1969); *State Farm Mutual Automobile Ins. Co. v. Robertson*, 156 Ind.App. 149, 295 N.E.2d 626 (1973); *Bradley v. Mid-Century Ins. Co. (Farmers)*, 78 Mich.App. 67, 259 N.W.2d 378 (1977); *Nygaard v. State Farm Mutual Automobile Ins. Co.*, 301 Minn. 10, 221 N.W.2d 151 (1974); *Lowery v. State Farm Mutual Automobile Ins. Co.*, 285 So.2d 767 (Miss.1973); *Herrick v. Liberty Mut. Fire Ins. Co.*, 202 Neb. 116, 274 N.W.2d 147 (1979); *Chavez v. State Farm Mutual Automobile Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975); *Ady v. West American Ins. Co.*, 69 Ohio St.2d 593, 433 N.E.2d 547 (1981); *Cothren v. Emcasco Insurance Company*, 555 P.2d 1037 (Okla.1976); *Bankes v. State Farm Mutual Automobile Ins. Co.*, 216 Pa.Super. 162, 264 A.2d 197 (1970); *Federated American Ins. Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815 (1977); *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974).

Some courts, holding that an exclusionary clause to otherwise uninsured motorist coverage is void as against public policy, acknowledge freely that since the risk to carriers is thereby enhanced, and there is no "free lunch," that such holdings will result in increased premium costs to all motor vehicle operators. It is suggested by those courts that such is a desirable result since it tends to alleviate the damage impact upon any individual, and spread the cost thereof over a broad segment of society. That approach at least has the virtue of realism. *Ady v. West American Ins. Co.*, 69 Ohio St.2d 593, 433 N.E.2d 547 (1981); *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974).

For our own part, however, we deem it necessary to examine our statutory scheme of automobile insurance, attempt to discern its legislative purpose, and decide if the exclusionary clause in the instant policy is contrary to that purpose and spirit.

Our statutes require owners of motor vehicles to provide motor vehicle liability insurance coverage. I.C. § 49–233. Such "motor vehicle liability policy" and its expressed, permitted and implied provisions, together with minimum amounts of coverage are contained in I.C. § 49–1521. Prior to the registration of any motor vehicle an applicant must certify the existence of such liability insurance and thereafter maintain such insurance. I.C. § 49–234. Operating a motor vehicle in this state without such liability insurance is a crime. I.C. § 49–235. Proof of such liability insurance must be carried in any motor vehicle operated in Idaho and be displayed on request to any peace officer, and failure to do so is also made criminal. I.C. § 49–245. A person in violation of the above statutes who is involved in an accident may suffer suspension of his operating license and vehicle registration. I.C. § 49–1505.

Our statutory scheme clearly mandates obtention of liability insurance in the operation of a motor vehicle. As before noted, such liability insurance is couched in terms of protecting the owner-operator of a vehicle from claims of damage suffered by others who have been injured by the operation of the vehicle, but clearly the intent of our legislature was to provide a source of funds from which a person damaged by the operation of the motor vehicle could obtain recourse.

■ We find nothing in our statutory scheme which mandates that the "motor vehicle liability policy" shall cover the insured regardless of what vehicle he may be operating, whether named or not in the policy. Rather, I.C. § 49–1521 only re-

quires that the policy designate the vehicle or vehicles which are covered and in addition "... shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages *arising out of the use by him of any motor vehicle not owned by him,...."* (Emphasis added.) We interpret that statutory language to require liability coverage of the named insured while he be driving any motor vehicle designated in the policy and owned by him, or any other vehicle not owned by him. It does not require liability coverage while he be operating a vehicle owned by him but not designated in the policy. Hence, an insurance carrier could, in compliance with the statute, specifically exclude coverage while the insured was driving an owned but non-designated vehicle.

The issue of this case focuses on I.C. § 41–2502. That statute has not been changed in substance since 1967, and states:

> 41–2502. **Uninsured motorist coverage for automobile insurance.**—No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49–1505, Idaho Code, as amended from time to time, under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the named insured shall have the right to reject such coverage, which rejection must be in writing; and provided further, such coverage need not be provided in or supplemental to a renewal policy where the

named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

■ As noted above, that statute requires an insurance carrier offering a "motor vehicle liability policy" to offer uninsured motorist coverage *"under provisions approved by the director of the department of insurance ..."* Such offer of uninsured motorist coverage as a part of or supplemental to a "motor vehicle liability policy," may be rejected by the insured. Hence, unlike a "motor vehicle liability policy," uninsured motorist coverage is not statutorily required as a condition of registration of or operation of a motor vehicle.

The legislature has made obvious that a motor vehicle liability policy is mandatory, and has specified that the coverage extends beyond the operation of the vehicles specified in the policy but has also specifically indicated that the coverage need not be extended to the operation of a motor vehicle owned by the insured but not described in the policy. On the other hand, we find no language in the uninsured motorist coverage statute which specifically requires such policy to extend coverage against damage from an uninsured motorist while the insured is outside the vehicle described in the policy. Neither does the uninsured motorist coverage statute specifically permit an exclusion of uninsured motorist coverage while the insured is outside the vehicle described in the policy. Hence, we find no legislative intent one way or the other on the specific question involved in the instant case, *i.e.*, the exclusion from uninsured motorist coverage when the insured is operating an owned motor vehicle not described in the policy.

We then look to the conclusions that we perceive can be legitimately drawn either from the legislative language or from the lack of legislative language. An insurance carrier is, of course, not required to do business in the state of Idaho and may decline to do so. If an insurance carrier does desire to do business in Idaho, it must comply with our applicable statutes and the

regulations of the Department of Insurance. Policies issued by carriers must be approved by the Department of Insurance. The policy at issue here has not been shown to have been disapproved by the Department of Insurance.

An insurance carrier doing business in Idaho may decline to engage in certain types of insurance coverage or decline to insure certain risk situations. It may decline to insure certain owners of motor vehicles, or may decline to insure certain types of vehicles. In the field of life insurance, a carrier may refuse to insure high-risk individuals, for example those with cancer, coronary or drug abuse history, or may write such coverage only at highly inflated premiums. A carrier may, by exclusions, exclude life insurance coverage when an insured engages in certain activities such as flying in private aircraft, sky-diving, or ultrahazardous activity.

We view the business of insurance as relatively simple in concept but complex in its detail. One purchases insurance as a hedge against risk. Thereby that risk is transferred partly or wholly to an insurance carrier. An insurance carrier will only remain in business if it is able to adequately assess the reality and the magnitude of the risk, and through the underwriting process charge premiums which will adequately compensate the carrier for the risks assumed. If a carrier fails to adequately assess or charge for the risks assumed, it will not be long in business. While the problems of adequately assessing risk, and of underwriting that risk, may be complex and difficult, the above principles remain the same.

It is arguable that the *principal* risk from damage caused by an uninsured motorist exists when the insured is occupying a motor vehicle. The risk of being injured by an uninsured motorist while an insured is riding a horse, camel, pogo stick, or while a pedestrian or sitting on one's front porch, may be relatively slight. Hence, a carrier may be willing to assume such additional slight risk without an increased premium. Arguably such is the case in the instant uninsured motorist policy which does not expressly exclude coverage under such situations.

We deem it obvious that a person is more likely to be occupying an owned vehicle than he is to be occupying a vehicle owned by someone else. Hence, an insurance carrier may be willing to assume risks which it perceives as relatively slight, *i.e.,* being damaged by an uninsured motorist while occupying a non-owned vehicle, without an increase in premium. It might be unwilling to insure against a risk it perceives as substantial without an increase in premium. If an insured is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.

If the legislature had desired to place such a burden on insurance carriers, it could have required carriers to insure *all* applicants for motor vehicle liability policies at a uniform rate. Clearly such a mandate would result in very substantial premium increases for careful, low risk drivers. Likewise, the legislature could have required insurance carriers to issue uninsured motorist coverage to all applicants at one rate regardless of how many or what type of vehicle the applicant might own, and regardless of how many of the owned vehicles the carrier might insure under liability coverage. The legislature has not enacted such a requirement, and if it did so, undoubtedly owners of a single vehicle would sustain rate increases.

In sum, we find nothing in our statutory scheme of automobile insurance which specifically requires an insurance carrier to extend coverage to an insured occupying an owned vehicle which is not insured by the carrier under a motor vehicle liability policy. We find no public policy implicit in our statutory scheme of automobile insurance which should require such coverage and thus invalidate the exclusionary clause in the instant case. We do not speak to

and specifically reserve the question in a circumstance as is presented in *Hammon* where an insured under two or more motor vehicle liability policies, each issued by the same carrier, and each of which insures a separate vehicle, and in each of which policies issued by the same carrier the insured has elected to and paid a premium for uninsured motorist coverage. Such a case, of course, would then involve the issue of stacking the coverages under each of the policies issued by the same carrier. Since we have held today that the exclusionary clause in the instant policy eliminates coverage while the insured is occupying another owned vehicle, uninsured by the same carrier, and have held that such exclusionary clause is not void as against public policy, we need not address the stacking issue in the instant case.

Judgment of the district court is affirmed. Costs to respondent.

DONALDSON, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting.

Our task in this case was not, as the majority suggests, simply to determine whether "the specific exclusion relied upon by Rocky Mountain which denies coverage in these circumstances, is void as against public policy," but to determine whether it was void as against the *legislature*'s policy as stated in Idaho's Uninsured Motorist Coverage Statute, I.C. § 41-2502. In pursuit of a supposed requirement of a judicial policy to protect insurance companies from having to make good on their statutory and contractual obligations, the majority of a necessity ignores both the dictates of I.C. § 41-2502 and the reasoning of the overwhelming majority of courts which have addressed the exact issue. As Justice Fogleman of the Arkansas Court so aptly expressed it, "I regret to see this court align itself with a pitifully small minority [of jurisdictions] in deciding such a case [as this one]." Holcomb v. Farmers Insurance Exchange, 495 S.W.2d 155, 160 (Fogleman, J., dissenting).

That majority became even more pitiful shortly thereafter by the overruling of two of the cases upon which the Arkansas majority had relied. Moreover, the majority regrettably ignores the plain language of Idaho's Uninsured Motorist Coverage statute, I.C. § 41-2502, in a manner fundamentally inconsistent with its treatment of the same statute in *Hammon v. Farmers Insurance Co.*, 109 Idaho 286, 707 P.2d 397 (1985). As in *Hammon*, the beneficiaries of today's misguided opinion are those insurance companies dedicated to the use of adhesion contracts as a means for avoiding statutorily required coverage. The losers, of course, are the "insured" people of Idaho. To reach this result, the majority now takes precisely the opposite tack which was taken in *Hammon*. It seems that the "insured" people of Idaho are bound to lose, whatever the means required to guarantee that their "just" fate is to be unjustly denied coverage which has been purchased.

*Hammon* concerned a provision of an automobile insurance policy which excluded coverage of injuries suffered at the hands of a hit-and-run driver where there was no "physical contact" with the victim. The majority held this provision was not in derogation of I.C. § 41-2502. The sole basis for this holding was the following analysis:

I.C. § 41-2502 requires that coverage be offered in every automobile liability insurance policy in the amount set forth by statute "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles...." The Hammons urge that the term "uninsured motor vehicle" should be construed to include an "unidentified motor vehicle." However, *it is fundamental rule of statutory construction that the language of a statute must be given its common and ordinary meaning. See, e.g., Florek v. Sparks Flying Service, Inc., 83 Idaho 160, 359 P.2d 511 (1961). [W]here the language of a statute is unambiguous, the clear express intent of the legislature must be given effect and there is no occasion of con-*

*struction." State v. Lawler,* 81 Idaho 171, 175, 338 P.2d 264, 266 (1959).

*An "uninsured" vehicle is clearly not the same as an "unidentified" vehicle.* The statute directs that coverage be made available for the protection of persons insured thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles. This language obviously contemplates that there is proof of the identity of the owner or operator of the vehicle; otherwise it could not be ascertained that the vehicle was uninsured. Normally, when the vehicle is a hit-and-run automobile, such identity cannot be ascertained. *Hammon, supra,* 109 Idaho at 288, 707 P.2d at 399 (emphasis added; footnote omitted).

Applying those same rules of statutory construction to the instant case yields a result 180 degrees apart from today's majority decision. The *common and ordinary meaning* of "persons insured thereunder" is *human beings* insured under the policy, not *vehicles* insured under the policy. The language of the statute *unambiguously requires* insurance companies to offer this coverage for the protection of human beings being insured. The *unambiguous* negative inference from this is that insurance companies may not exclude coverage to these human beings while occupying or driving a vehicle not listed in the policy. The *clear* express intent behind I.C. § 41–2502 is to require coverage of *persons* and to forbid coverage short of its requirement such as perpetrated by the instant insurance company. *Accord, e.g., Welch v. State Farm Mutual Automobile Insurance Co.,* 122 Wis.2d 172, 361 N.W.2d 680 (1985); *Lindahl v. Howe,* 345 N.W.2d 548 (Iowa 1984); *Harvey v. Travelers Indemnity Co.,* 188 Conn. 245, 449 A.2d 157 (1982); *Bradley v. Mid-Century Insurance Co.,* 78 Mich.App. 67, 294 N.W.2d 141 (1980); *Otto v. Farmers Insurance Co.,* 558 S.W.2d 713 (Mo.App.1977); *Nygaard v. State Farm Mutual Automobile Insurance Co.,* 301 Minn. 10, 221 N.W.2d 151 (1975); *Elledge v. Warren,* 23 So.2d 912 (La.App.1972). As the unanimous Arizona

Supreme Court noted concerning the same statutory language: "The statute does not contemplate a piecemeal whittling away at the liability protection for injuries caused by uninsured motorists." *Calvert v. Farmers Insurance Co.,* 144 Ariz. 291, 697 P.2d 684, 688 (Ariz.1985) (citations to numerous cases in accord omitted).

The majority purports to find "no language" in the statute requiring coverage where the insured is in an unlisted vehicle. This is not surprising where the majority conveniently avoids attempting any analysis of the language of the statute. By so confining itself the majority has been unable to discover therein the phrase "for the protection of *persons* insured thereunder." Clearly, contrary to the converse situation in *Hammon,* it better suits the majority's result-oriented opinion to ignore the statute's plain language and express intent. One thing is certain: In each case the insurance company has received the favor of the majority which speaks for the Court.

Amazingly, the majority need have looked no further for the correct answer to today's question than the *Hammon* decision which the same three justice majority rendered. Therein they wrote: "The statute directs that coverage be made available for the protection of *persons* thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles." *Hammon, supra,* 109 Idaho at 288, 707 P.2d at 399 (emphasis added). This language clearly recognized that the statute protected persons, not vehicles. Today's majority necessarily rejects its *own understanding* of I.C. § 41–2502 as recorded in *Hammon.*

Had the legislature intended to permit the tying of uninsured motorist coverage to vehicles, it easily could have done so. Instead, the legislature required that persons be offered the opportunity to protect *themselves* against the financial hardships of irresponsible drivers through the purchase of uninsured motorist coverage. The legislature did not restrict uninsured motorist coverage to circumstances where the per-

son injured was in the same vehicle which was insured against liability losses. *See Calvert v. Farmers Insurance Co.*, 144 Ariz. 291, 697 P.2d 684, 687 (1985) ("If the Legislature had intended to include additional exclusions, such as an 'other vehicle' exclusion [which would deny coverage to insured persons injured in vehicles other than those covered by the liability policy], it would have expressly done so."); *id.* 697 P.2d at 689 ("*[O]ur Uninsured Motorist Act was created 'for the protection of persons,' and not for the protection of the insured vehicle."* (Emphasis added.)); *Harvey, supra; Bradley, supra; Otto, supra.*

That the legislature *knew how* to tie insurance coverage to vehicles rather than to persons is clearly evinced in Idaho's liability insurance statute, I.C. § 49–233. That statute requires liability coverage for injury, damages, or death resulting from the *maintenance or use of motor vehicles*:

> **49–233. Required motor vehicle insurance.**—(a) Every owner of a motor vehicle which is registered and operated in Idaho by the owner or with his permission *shall continuously provide insurance against loss* resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person *caused by maintenance or use of a motor vehicle or motor vehicles described therein* in an amount not less than that required by section 49–1521, Idaho Code, and shall demonstrate the existence of any other coverage required by title 49, Idaho Code, or a certificate of self-insurance issued by the department pursuant to section 49–1534, Idaho Code, for each motor vehicle to be registered. (Emphasis added.)

As the majority concedes, this language clearly permits the exclusion of coverage for vehicles not "described therein [within the insurance policy.]" As the majority also concedes, I.C. § 41–2502 *lacks such language* permitting an "other vehicle" exclusion. But as the majority refuses to acknowledge, the fact that the legislature expressly permitted such an exclusion to

liability coverage but omitted such express permission in its Uninsured Motorist Coverage statute strongly demonstrates its intent to not allow the very "other vehicle" exclusion which concerns us today. *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 n. 7 (1986) (reflecting the maxim, *expressio unius est exclusio alterius*). This expression of intent (which the majority ignores), coupled with the statute's reference to *persons* (a reference the majority ignores), is convincing that the legislature intended for coverage to be offered to persons without prescription as to the place where those persons are when injured. As the *Calvert* court observed:

> There is nothing in our uninsured motorist statute which limits coverage depending on the location or status of the insured. Thus, our uninsured motorist protection is portable. The insured and family members insured are covered not only when occupying an insured vehicle, but also when in another automobile, when on foot, when on a bicycle or when sitting on a porch. *Calvert, supra,* 697 P.2d at 689; *accord, e.g., Bradley, supra; Elledge, supra; Welch, supra.*

The legislature had good reason to tie uninsured motorist coverage to persons rather than to vehicles. The insured individual who is injured by an uninsured motorist is equally disadvantaged when injured whether walking down the street, hopping on the majority's "pogo stick," or driving or passenger in a vehicle not listed on the policy *Id.* Obviously, the *risk* of the insured from uninsured motorists differs from the *risk* of liability which liability insurance concerns. The former risk is one of injury to one's "person"; the latter is the risk of causing injury to others arising out of the use of one's own vehicle. For this obvious reason, the legislature wrote separate and basically different statutes to govern the respective risks. Yet the majority treats I.C. § 41–2502 as though the wording were identical to I.C. § 49–233.

The majority's smiling upon the "other vehicles" exclusion leaves open the possibility of various absurd results. As the majority points out, under his Rocky Mountain policy, had Dullenty been a passenger in someone else's vehicle, or a pedestrian, or had been sitting on his front porch when he was injured by an uninsured vehicle, he would have been insured. Thus, Dullenty while standing next to his Blazer was insured, but was unprotected once he stepped inside. The legislature precluded such absurdity by requiring coverage of "persons" without limitation as to circumstances. Regrettably, the legislature's work is now undone by a highly suspect court opinion.

The majority empathizes with insurance carriers' its weighing of the risks related to the various circumstances under which an uninsured motorist might injure the insured person. This discussion makes tolerably interesting reading, but is wholly irrelevant, since the legislature directed that the insured *persons* be insured in all circumstances. *The legislature* evidently weighed the risk sufficiently great to require unexcepted coverage.

Continuing in its empathy for the insurance industry, the majority decries, along with other certain "opinions," "the inequity of allowing a person who insures one vehicle with an insurance carrier to obtain a 'free ride' by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he has paid no premium to the carrier." "*Some courts* upholding the validity of such exclusionary clauses," observes the majority, "opine that rewarding a plaintiff who himself is operating an uninsured vehicle is contrary to legislative policy." First of all, the "free ride" philosophy to which the majority refers is hardly credible, as the cost of adding coverage to other vehicles is slight. As

Professor Alan Widiss noted some time ago: "Acquisition of insurance for a second vehicle is relatively inexpensive; therefore, permitting the insurer to withhold coverage for the small return seems of dubious merit." A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.9 (1969) (revised version cited *infra*). Second, Idaho, along with virtually all other jurisdictions, has in place uninsured motorist coverage statutes which contain *no* legislative policy against extending coverage to persons insured under the policy who by happenstance are injured in a vehicle other than the listed vehicle. To the contrary, the statutes *mandate* that policies insure "persons" wherever they are from the risk of injury at the hands of an uninsured motorist, since the risk is a potential threat to all "persons" whoever and wherever they ar Third and most important, both these "policy" arguments espoused by the majority spring from its *own perceptions* rather than from the *statute*, wherein the *legislature's* policy is expressed. The majority would do well to take some venerable advice: "[Public policy] is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail." *Richardson v. Mellish*, 2 Bingham. 229, 252 (1824) (J. Burrough). Here, without any plausible argument based on the language of the statute or persuasive authority, the majority mounts its own policy[1] and takes Idahoans on a reckless ride over a cliff. Sorry Idahoans, that horse was not listed.

Curiously, as in the lengthy prologue prior to the policy-making of *Dunbar*, the majority cites twelve cases purportedly representing "the various viewpoints" on these "policy" considerations. Despite the majority's plural reference to "various

---

1. The bench and bar may find this not the first time Justice Shepard has confused statutory language and case law in order to place this Court in the position of "determining and enunciating policy." *Dunbar v. United Steelworkers of America*, 100 Idaho 523, 546, 602 P.2d 21, 44 (1979), *overruled Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986). In the case of the un- insured motorist coverage statute, which concerns us now, as with the Tort Claims Act which concerned us in *Dunbar*, the statutory language and case law afford far more than the "scintilla of [legislative] intent" Justice Shepard is willing to concede. *Id.*

viewpoints" and to "opinions" and "some courts" which hold as it finally holds, eleven of the twelve cases cited *uniformly held "other vehicle" exclusions invalid.* See, *e.g., Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100, 103 (1975) ("other vehicle" exclusionary policy void; coverage required of plaintiff's injuries sustained on uninsured motorcycle); *Federated American Insurance Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815 (1977) (same holding); *Cothren v. Emcasco Insurance Co.*, 555 P.2d 1037 (Okla.1976) (same holding). For example, the Ohio Court rejected the very argument the majority now makes:

> Appellant argues that invalidating the exclusion would result in a "free ride" for Terry Ady. That is, he could obtain uninsured motorist coverage, at no additional cost, under his father's policy. Initially, it is important to note that Terry Ady paid premiums for uninsured motorist coverage under his own policy. Here, he was asking for coverage under his father's policy only for expenses above those covered by his own policy. But for the exclusion, he would qualify for coverage under his father's policy.
>
> More importantly, the purpose of the statute is to protect persons injured by uninsured motorists, it does not limit coverage to a few situations. *Ady v. West American Insurance Co.*, 69 Ohio St.2d 593, 433 N.E.2d 547, 550 (1981).

In any event, what the majority simply will not come to grips with is the fact that insured individuals like Dullenty *bought and paid for coverage of their "person."* Accord, *e.g., id.* A person who buys several such policies insuring his or her person is entitled to the benefits of the purchase. An insured obtains no "free ride" from policies bought and paid for. However, under the majority's holding Rocky Mountain and all other insurance companies are now the ones receiving a *free lunch*—having sold the insured uninsured motorist policy but now immunized from affording coverage under the policy. The Nevada Supreme Court aptly observed:

If our Legislature had intended to prevent an owner of two motor vehicles from paying for insurance on only one and recovering benefits for his injuries sustained while operating the other, it could have followed the lead of the legislatures in some of the other jurisdictions and limited the coverage by providing that N.R.S. 693.115(1) did not apply to bodily injury suffered by the insured while occupying a motor vehicle owned by him, unless the occupied vehicle was an insured motor vehicle. Such an amendment would be the prerogative and responsibility of the legislature and not the function of this court. *State Farm Mutual Automobile Insurance Co. v. Hinkel*, 87 Nev. 478, 488 P.2d 1151, 1154 (1971); *accord, Calvert, supra*, 697 P.2d at 689 and numerous citations therein.

Professor Widiss, author of the definitive treatise on uninsured motorist insurance, effectively rebuts all of the possible justifications for this exclusion:

> One explanation for the exclusion is that it is designed to reduce the scope of the insured's liability under the uninsured motorist coverage.... *Since [the scope of] uninsured motorist insurance is statutorily mandated, there is little, if any, justification for allowing insureds to include this coverage exclusion in order to reduce their potential liability. Once a state has decided it is in the public interest to assure a source of indemnification to persons who are injured by negligent uninsured motorists, then the insurance ought to be available to an insured person at all times, including when the insured is occupying a vehicle owned by another clause (A) insured, or walking down a street or sitting in a rocking chair. ...*
>
> The family member exclusion may have been included in the uninsured motorist coverage terms to induce all family members to acquire liability insurance for each automobile owned by members of the household.... [I]t is doubtful whether the exclusion in fact has much impact in fulfilling [the objectives of promoting the sale of insurance and the

public interest in having owners acquire liability insurance for all vehicles] because most purchasers are probably unaware of the exclusion and its impact on the uninsured motorist coverage....

From the standpoint of the insurance company, the exclusion is desirable in that it encourages the acquisition of insurance for all vehicles owned by family members who reside together from a single insurance company. However, most insurance companies make little, if any, effort to make this fact known to purchasers, and thus it is unlikely that this is a significant factor in either insurance marketing or actuarial computations of the premiums to be charged for the coverage....

The household family member exclusion may also be intended as a limited form of intrafamily tort immunity that would preclude coverage when a claim is based on the negligence of a family member.... Although the insurance company's liability under the uninsured motorist insurance depends on the negligence of a person—who in some instances may be a family member—the claim is against the insurance company under a first party insurance contract. Accordingly, the possibility of disrupting the family by litigation among family members, which is one of the most important justifications for intra-family immunity, does not exist in this context....

Enforcement of the exclusion has occasionally been urged on the basis that so long as the coverage provisions are not in conflict with the state's uninsured motorist legislation, insurance policy terms should be treated as an agreement between the parties.... [However,] [m]ost purchasers are barely aware of the uninsured motorist coverage. They are neither aware of nor do they understand the intricacies of a coverage provision such as the household family member exclusion.... There is a lack of informed assent by insurance purchasers to the provisions of the uninsured motorist coverage. To predicate the enforceability of the exclusion on presumed assent ignores the true character of this type of insurance transaction....

The most plausible rationale for the family member exclusion may be that it ... was designed to reduce the number of instances in which the multiple coverage question can arise by eliminating coverage for an insured who occupies a vehicle owned by a member of the insured's family when the vehicles is not insured by the same policy. In other words, the exclusion is an additional means of avoiding claims under more than one insured motorist coverage.... Suffice it to observe here that many of the multiple coverage provisions in uninsured motorist insurance have been voided in a substantial number of states [the reason for which Professor Widiss discusses elsewhere]. A. Widiss, 1 *Uninsured and Underinsured Motorist Insurance* § 4.19 (2d ed. 1985) (emphasis added) (footnotes omitted; citations omitted).

The authority which has decided this issue contrary to today's decision is the clear and growing majority. *See generally*, A. Widiss, *supra*. The Arizona Court compiled a list of 26 jurisdictions, *Calvert, supra*, 697 P.2d at 687–88, to which we can now add Arizona and Ohio. *Ady, supra*, 433 N.E.2d at 551. *See also, Farmers Insurance Exchange v. Call*, 712 P.2d 231 (Utah 1985) (invalidated "household" exclusion). Contrary to the majority's cavalier and undocumented assertion, these opinions typically are carefully and thoroughly reasoned. *See, e.g., Calvert, supra; Welch, supra; Lindahl, supra; Elledge, supra; Harvey, supra; Bradley, supra; Otto, supra*. These courts yield to the legislature's plain language and clear intent. In contrast, the four cases cited by the majority *ignore* both. *Holcomb v. Farmers Insurance Exchange*, 254 Ark. 514, 495 S.W.2d 155 (1973) (fails to analyze statutory language); *MFA Insurance Companies v. Whitlock*, 572 S.W.2d 856 (Ky.1978) (a brief opinion, along with its equally cursory predecessor, *State Farm Mutual Automobile Insurance Company*

v. *Christian*, 555 S.W.2d 571 (Ky.1977), which fails to examine or even quote the statutory language); *Herrick v. Liberty Mutual*, 202 Neb. 116, 274 N.W.2d 147 (Neb.1979) (a brief opinion based on judicially perceived policy rather than on statutory language); *Beliveau v. Norfolk & Dedham Mutual Fire Insurance*, 120 N.H. 73, 411 A.2d 1101 (1980) (fails to distinguish between liability and uninsured motorist coverage). The fourth case relied upon by the majority, *Beliveau*, involved an exclusion from coverage of a relative living in the insured's household rather than the insured himself; consequently, this case is *not on point. Beliveau, supra*, 411 A.2d at 1103.

While sheer numbers of decisions may not be controlling, when the weight is as extreme on one end of the scale, as it is here, "sheer numbers" evinces the sheer folly of adopting a rule of law so pervasively shunned by the majority of courts. Even as the majority takes the position of upholding the exclusion, other jurisdictions which formerly held that position are recognizing it to be fallacious, and hence are abandoning it. *See Calvert, supra* (Arizona); *Ady, supra* (Ohio); *Richards v. State Farm Mutual Automobile Insurance Co.*, 122 Wis.2d 172, 361 N.W.2d 680 (Wisc.1985); *Shepard v. American States Insurance Co.*, 671 S.W.2d 777 (Mo.1984). The majority today for unfathomable reasons takes an ill-charted course without any regard to the statutory language, and wholly at odds with overwhelming and persuasive authority.

HUNTLEY, J., concurs.

HUNTLEY, Justice, dissenting.

I must respectfully dissent and in so doing so invite the attention of the bench and bar to an appreciation of the holdings of eleven of twelve cases cited by the majority opinion at pages 103 and 104, 721 P.2d at pages 203 and 204 as representing of the various viewpoints.

The majority there cites twelve cases, some of which supposedly support its position, by introducing them with the following statement:

"On the other hand, opinions holding such exclusionary clauses to be valid most often refer to the inequity of allowing a person who insures one vehicle with an insurance carrier to obtain a 'free ride' by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he has paid no premium to the carrier. Some courts upholding the validity of such exclusionary clauses opine that rewarding a plaintiff who himself is operating an uninsured vehicle is contrary to legislative policy. For cases presenting the various viewpoints, *see Aetna v. Hurst* [2 Cal. App.3d 1067], 83 Cal.Rptr. 156 (Ct.App. 1969); *State Farm Mutual v. Robertson* [156 Ind.App. 149], 295 N.E.2d 626 (Ct. App.Ind.1973); *Bradley v. Mid Century Insurance* [78 Mich.App. 67], 259 N.W.2d 378 (Mich.App.1977); *Nygaard v. State Farm* [301 Minn. 10], 221 N.W.2d 151 (Minn.1974); *Lowrey v. State Farm*, 285 So.2d 767 (Miss.1974); *Herrick v. Liberty Mutual*, 274 N.W.2d 147 (Neb.1979); *Chavez v. State Farm Mutual* [87 N.M. 327], 533 P.2d 100 (N.M.1975); *Ady v. West American Insurance Company* [69 Ohio St.2d 593], 433 N.E.2d 547 (Ohio 1981); *Cothren v. Emcasco Insurance*, 555 P.2d 1037 (Okla.1976); *Bankes v. State Farm Mutual* [216 Pa.Super. 162], 264 A.2d 197 (Pa.Super.1970); *Federated American Insurance v. Raynes* [88 Wash.2d 439], 563 P.2d 815 (Wash.1977); *Bell v. State Farm* [157 W.Va. 623], 207 S.E.2d 147 (W.Va.1974)."

The fact is, that of the twelve cases cited, only one, the Nebraska case, supports the majority position; and even that case, *Herrick v. Liberty Mutual*, 202 Neb. 116, 274 N.W.2d 147 (Neb.1979), can be explained as being poorly reasoned.

The *Herrick* majority ignores the plain language of Nebraska's Uninsured Motorist Coverage Statute, holding that from its perspective, "[a]n overriding public policy of protecting an owner-operator who inexcusably has no applicable bodily liability coverage is not presently discernible." *Herrick*, 274 N.W.2d at 148 (quoting *Ship-*

*ley v. American Standard Insurance Co.,* 183 Neb. 109, 158 N.W.2d 238 (1968)). In the process, the *Herrick* majority, like the majority herein, refuses to acknowledge the policy as established in Nebraska's statute. The two dissenting justices acknowledged that *Shipley* was "wrongly decided" which view is "supported by an ever-lessening number of states and that any number of states once holding with Nebraska have re-examined their position and reversed themselves, [such as Arizona and Illinois] as we should do." This Court has an opportunity to avoid the Nebraska Court's mistake, and we should do so.

Four of the eleven cases which are exemplary of the holdings of the other eleven cases cited by the majority are:

(1) "The exclusion clause here is invalid because it is not the intent of the statute to limit coverage for an insured to a particular location or a particular vehicle. As pointed out by the Louisiana Court of Appeals in construing a statute identical to ours:

> 'There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch.' "

*Chavez v. State Farm Mutual Insurance Co.,* 87 N.M. 327, 533 P.2d 100, 103 (1975).

(2) "... We believe the limits-of-liability provision conflicts with the statutory policy of providing uninsured motorist coverage."

   \*    \*    \*    \*    \*    \*

"We hold that the number of uninsured motorist coverages on which an insured is entitled to rely is determined by the number of premiums paid and not by the number of policies under which the cars are insured. Because the limits-of-liability provision in FAI's policy purports to limit coverage based on the number of policies issued to an insured and not on the number of premiums paid by the insured, the provi-

sion constitutes an invalid attempt by FAI to erode the amount of uninsured motorist coverage to which respondent is entitled. Respondent may combine the two uninsured motorist coverages so as to have $30,000 in uninsured motorist coverage under his policy with FAI." *Federated American Ins. Co. v. Raynes,* 88 Wash.2d 439, 563 P.2d 815, 820 (1977).

(3) "Provision of uninsured motorist clause excluding coverage for bodily injury sustained while occupying a highway vehicle owned by the named insured but not listed in the policy was void was contrary to public policy; hence, clause could not be used to deny coverage for injuries sustained by named insured's stepson, who was a resident of the same household and who was injured while riding as a passenger on a motorcycle, the title to which was either in the stepfather or his mother but which was not listed as an insured vehicle." Headnote of *Cothren v. Emcasco Insurance Co.,* 555 P.2d 1037 (Okl.1976).

(4) "An uninsured motorist clause in an insurance policy, if such policy conforms to the statute, insures all family members of a named insured's household without exception whenever bodily injury results from an accident with an uninsured motorist in which the uninsured motorist would be legally liable. Within this required uninsured motorist coverage there are no distinctions with regard to an owned but not insured motor vehicle, as the coverage applies to use or occupancy of 'a motor vehicle or otherwise.' "

         ...

"An insurance policy, therefore, which seeks to defeat the purpose of spreading the burden of loss or the benefits of coverage by limiting through exclusions or otherwise, the insurance underwriter's liability is repugnant to the uninsured motorist statute. In this regard the Court notes with approval the following from Widess. A Guide to Uninsured Motorist Coverage, Section 29:

> 'There seems to be a growing trend of decisions in which the courts have taken the position that such restrictions [exclu-

sionary clauses] upon the coverage are against public policy and therefore void. One case ... elicited the following response which speaks to the question [of exclusionary clauses] generally: 'Thus, the uninsured motorist coverage was applicable if at the time of sustaining injury ... a named insured was occupying the Ford described in his policy or was on foot or on horseback or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile furnished for his regular use.' "

*Bell v. State Farm Mut. Auto Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147, 149, 150 (1974).

The overwhelming majority of justices and judges throughout this land have decided contrary to the majority herein after analyzing in depth all the considerations which face this court in the instant case. It is entirely possible that "our three" are right and the "rest" are wrong—or is there another possibility?

BISTLINE, J., concurs.