## UNITED SERVICES AUTOMOBILE ASSOCIATION

v.

### Anthony EVANGELISTA, Admin. of the Estate of Vincent Evangelista.

Civ. A. No. 87–7793.

United States District Court,
E.D. Pennsylvania.

Oct. 13, 1988.

Bruce S. Pancio of Dion and Rosenau, Philadelphia, Pa., for plaintiff.

Edward F. Silva of Feinberg and Silva, Philadelphia, Pa., for defendant.

MEMORANDUM

GILES, District Judge.

## I. INTRODUCTION

United Services Automobile Association (USAA), seeks a declaratory judgment determining its rights and obligations and those of defendant under an automobile insurance policy as it pertains to a fatal car accident of September 2, 1984. In that accident, the insured's brother was the victim. The parties have filed cross-motions for summary judgment.

Relative to the policy language, there are three issues for resolution: (1) where was the "household" of USAA's insured, an enlisted serviceman as of the date of the accident; (2) what effect, if any, should be given to an "exclusionary clause"; and (3)

what effect should be given to an "excess clause." For the following reasons, defendant's motion for summary judgment shall be denied and plaintiff's motion for summary judgment shall be granted.

## II. FACTUAL BACKGROUND

On April 4, 1983, Mark Evangelista left his childhood home in Hazelton, Pennsylvania, and entered active duty in the United States Air Force. Prior to enlistment, he had continuously maintained residence at his parents' Hazelton home. He was first stationed at Lackland Air Force Base in San Antonio, Texas. In July, 1983, he was transferred to a military station in St. Louis, Missouri, so that he could participate in a one-year education program at St. Louis University.

In November, 1983, while living in St. Louis, Mark Evangelista bought a new car and purchased the USAA policy in question. USAA is headquartered in Texas and issues policy coverage applicable in all fifty states, Puerto Rico and Canada. At approximately the same time, Mark Evangelista also purchased a household goods policy for his St. Louis apartment from USAA. He renewed the car insurance policy for the period August 1, 1984 to November 23, 1984. The address listed on the policy is St. Louis, Missouri. In August, 1984, after completing the education program, Mark Evangelista was transferred by the Air Force to the Elmendorf Air Force Base in Alaska. His car insurance policy was subsequently amended to reflect this move, effective September 30, 1984.

By affidavit, Mark Evangelista testifies that throughout his military career he considered Hazelton, Pennsylvania his home. He asserts that he deliberately maintained his Pennsylvania driver's license, voter's registration, and listed the Hazelton address as his permanent residence in all military records to retain his Pennsylvania citizenship and residency.

On September 2, 1984, Vincent Evangelista, brother of Mark Evangelista, was fatally injured in a motor vehicle accident in Luzerne County, Pennsylvania. An unknown vehicle made a sudden lane change and Chris Evangelista, the driver and owner of the car in which the decedent was a passenger, lost control of his car. Like Vincent Evangelista, Chris Evangelista was a brother of Mark Evangelista. Both Vincent and Chris Evangelista were legal residents of the Hazelton household.

State Farm Mutual Automobile Insurance Company had insured Chris Evangelista's car and Erie Insurance Company (Erie) had insured a vehicle owned by Vincent Evangelista. Both companies paid to the estate of Vincent Evangelista the maximum uninsured motorist benefits allowed under their policies.[1]

Anthony Evangelista, the father of Vincent and Mark, resided at the Hazelton home. He was the owner of another vehicle insured by Erie. Under that policy, Erie paid another $90,000.00 in uninsured motorist benefits to the Estate of Vincent Evangelista.

USAA now alleges that the Estate of Vincent Evangelista fails to meet three essential criteria to collect benefits under Mark Evangelista's policy. First, it claims that the decedent was not a person related by blood, marriage or adoption *who was a resident of the same household as its insured.* Second, it alleges that a specific provision in the policy excludes Vincent Evangelista from uninsured motorist coverage. Finally, USAA claims that its uninsured motorist coverage is excess coverage to all other coverage, and that since the Estate of Vincent Evangelista settled for less than the maximum coverage available from Erie under Anthony Evangelista's policy, that USAA owes no benefits.

The defendant contends that a serviceman retains the residency maintained prior to enlistment when his actions suggest that indeed the prior residence continues to be the home. Defendant also claims that Vincent Evangelista was not excluded under

---

**1.** State Farm paid $25,000.00 and Erie paid $50,-000.00. The maximum allowable benefit was $100,000.00.

the policy, and that even though USAA's policy contains an excess clause, since the Erie policy of Anthony Evangelista also contains an excess clause, under Pennsylvania law both policies must be treated of equal status.

## III.  DISCUSSION

### A.  *Applicable Law*

In diversity actions, federal courts are to apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).  Under traditional Pennsylvania choice of law rules, insurance contracts are governed by the law of the state where they are made.  Pennsylvania courts have determined that contracts are "made" at the place of delivery.  *Jamison v. Miracle Mile Rambler, Inc.,* 536 F.2d 560, 562 n. 1 (3d Cir.1976) (citing *Crawford v. Manhattan Life Ins. Co. of N.Y.,* 208 Pa.Super. 150, 221 A.2d 877).  Two decades ago, however, the Pennsylvania Supreme Court rejected the traditional *lex loci delicti* approach and adopted a hybrid version of "interest" and "significant contacts" analysis.  *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).  Although the *Griffith* court only applied the analysis to tort actions, the Third Circuit determined that the *Griffith* analysis applies generally to contract actions and specifically to insurance contracts.  *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1313 (3d Cir.1978).

> Using the *Griffith* approach, this court must weigh the contacts [to the respective states] on a qualitative scale according to their relation to the policies and interests underlying the [primary issues].

*Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 400 (3d Cir.1987) (citations omitted).  If there were a conflict between the laws of Pennsylvania and Missouri, I would be required to examine the policies and interests of the two states as they related to each of the three issues in contention.  However, because I find and the parties agree that there is no difference between the law of the Commonwealth of Pennsylvania and the law of the State of Missouri, the interests and contacts of the two states need not be addressed.

### B.  *Mark Evangelista's Household*

■  Mark Evangelista's USAA insurance policy entitles covered persons to claim uninsured motorist benefits.  *See* Part C of USAA policy.  It is agreed that the motorist who instigated the September 2, 1984, accident was uninsured, but there is controversy as to whether Vincent Evangelista was a "covered person."  The policy covers "any family member."  USAA policy at 5.  Defendant claims that Vincent Evangelista qualified as a "family member."  The policy defines a family member as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household.  This includes a ward or foster child."  USAA policy at 1.

Vincent Evangelista was related by blood to Mark Evangelista.  Thus, the primary point of contention between the parties is whether he resided in Mark Evangelista's household at the time of the accident.  It is undisputed that Vincent Evangelista at all times resided and was domiciled in his parent's Hazelton home.  Therefore, the question becomes whether the Hazelton, Pennsylvania home was Mark Evangelista's "household" for purposes of the USAA insurance policy.

Pennsylvania courts have defined a household as "a family residing together in one dwelling using common living quarters and facilities under such domestic arrangements and circumstances, as create a single family unit or establishment."  *Shank Estate,* 399 Pa. 656, 658, 161 A.2d 47, 48 (1960) (quoting *Niedzielski Estate,* 4 Pa.D. & C.2d 290, 292 (1955); *Matter of Estate of Otteni,* 486 Pa. 631, 633, 406 A.2d 1379, 1380 (1979).  *See also Boyd v. Folsom,* 149 F.Supp. 925, 927 (W.D.Pa.1957), *aff'd,* 257 F.2d 778 (3d Cir.1958).  While recognizing the difficulty in rendering a concrete definition, Missouri courts and federal courts interpreting Missouri law have described a "household" in similar terms.  *See e.g., Countryside Casualty Co. v. McCormick,*

722 S.W.2d 655, 658 (Mo.App.1987); *Stone v. Waters,* 483 S.W.2d 639, 644 (Mo.App. 1972); *Johnson v. State Farm Mutual Automobile Ins. Co.,* 252 F.2d 158, 161 (8th Cir.1958). A person may be a member of more than one household. *See Boyd v. Folsom,* 149 F.Supp. 925, 927 (W.D.Pa. 1957), *aff'd,* 257 F.2d 778 (3d Cir.1958); *Stone v. Waters,* 483 S.W.2d 639, 644 (Mo. App.1972).

Mark Evangelista, although stationed by the Air Force in Missouri and then in Alaska, was a legal resident and domicile of the Commonwealth of Pennsylvania at the time of his brother's death on September 2, 1984. The requirements for legal residence or domicile are (1) physical presence, and (2) an intent to remain indefinitely. Once domicile is acquired it remains the person's only domicile until another one is acquired. A previous domicile is presumed to be a person's domicile until it is proven to have changed. *Shishko v. State Farm Ins. Co.,* 553 F.Supp. 308, 310 (E.D.Pa.1982), *aff'd,* 722 F.2d 734 (3d Cir.1983); *Holmes v. Sopuch,* 639 F.2d 431, 434 (8th Cir.1981). Mark Evangelista was domiciled in Hazelton, Pennsylvania, when he enlisted in the Air Force. Although the Air Force transferred him from Texas to Missouri, and from Missouri to Alaska, he never claimed his domicile to be any place but Hazelton. He maintained a Pennsylvania driver's license, Pennsylvania voter's registration, and listed the Hazelton, Pennsylvania address as his permanent home on all military papers. In addition to maintaining a legal Pennsylvania residence, his father, Anthony Evangelista, avers that the son retained his own room at the Hazelton, Pennsylvania home, keeping civilian clothes and other personal items there. The son also lived in the Hazelton home when on leave from military service. Affidavit of A. Evangelista, pp. 304. Military service in another state does not alone emancipate a person from his family's home. *See American Service Mutual Insurance Co. v. Pugh,* 271 F.2d 174 (8th Cir.1959). Therefore, Mark Evangelista retained Pennsylvania as his domicile. *See Turek v. Lane,* 317 F.Supp. 349 (E.D.Pa.1970); *Johnson v. Za-*

*refoss,* 198 F.Supp. 548 (E.D.Pa.1961), *aff'd,* 305 F.2d 825 (3d Cir.1962).

From the facts presented, this court finds that the Hazelton, Pennsylvania home was Mark Evangelista's household for purposes of the USAA insurance policy. It follows then that Vincent Evangelista was a "covered" family member under the uninsured motorist section of Mark Evangelista's USAA automobile insurance policy on September 2, 1984, and also that the driver was subject to the policy's limitations.

C. *The Exclusionary Provision*

In its answer to defendant's motion for summary judgment, USAA claims that a specific provision in Mark Evangelista's policy excluded Vincent Evangelista from uninsured motorist coverage. Answer to Defendant's Motion for Summary Judgment at 7. In support of its argument, USAA cites an exclusion provision in the policy which states in pertinent part:

*Exclusions*

A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

1. While *occupying,* or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

USAA policy at 6.

Under both Missouri and Pennsylvania law, if the terms of an insurance policy are ambiguous, they must be construed against the insurer and in favor of the insured. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir.1981); *AC and S, Inc. v. Aetna Casualty & Surety Co.,* 764 F.2d 968, 973 (3d Cir.1985). Exclusions from insurance coverage are to be strictly construed against the insurer. However, if they are clearly worded, unambiguous and conspicuously displayed, they are to be given their plain meaning and are effective against a claim by an insured. *Missouri Terrazzo Company, Inc. v. Iowa National Mutual Ins. Co.,* 740 F.2d 647, 651 (8th Cir.1984); *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985).

The cited exclusion is clear, unambiguous and conspicuously displayed in the policy. It plainly states that the policy does not provide uninsured motorist coverage for anyone injured while occupying, or struck by, a vehicle owned by the insured or a family member when that vehicle is not insured under the policy. Regardless of the purpose of the exclusion, it is valid and applies to the parties in this case.

Since Mark Evangelista's household for purposes of interpreting the USAA policy was the Hazelton, Pennsylvania home, and Chris Evangelista was a resident of that household, Chris Evangelista was a "family member" under the USAA policy. However, Chris Evangelista's car was not insured for coverage under the USAA policy and no occupant of his car was entitled to uninsured motorist coverage. Therefore, since Vincent Evangelista was occupying Chris Evangelista's car at the time of the fatal accident, he was not covered for bodily injury under the uninsured motorist section of Mark Evangelista's USAA insurance policy and was not entitled to benefits. Accordingly, USAA's motion for summary judgment must be granted and defendant's motion for summary judgment is denied.

Since the exclusion clause is dispositive, the court need not decide the relationship of the USAA policy to the Erie policy.