**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant in 90–1534,**

v.

**Earl D. HAMPTON, Jr., Earl D. Hampton, Sr. and Barbara Hampton, Appellants in 90–1523.**

**Nos. 90–1523, 90–1534.**

United States Court of Appeals, Third Circuit.

Argued Feb. 6, 1991.

Decided May 31, 1991.

Stephen M. Karp (argued), Grant, Karp & Associates, Paoli, Pa., for appellants/cross-appellees Earl D. Hampton, Jr., Earl D. Hampton, Sr. and Barbara Hampton.

Edward J. Carney, Jr. (argued), Petrikin, Wellman, Damico, Carney & Brown, Media, Pa., for appellee/cross-appellant Nationwide Mut. Ins. Co.

David M. Jakobi, Paoli, Pa., for amicus curiae, Pennsylvania Trial Lawyer's Ass'n on behalf of appellants/cross-appellees Earl D. Hampton, Jr., Earl D. Hampton, Sr. and Barbara Hampton.

Peter J. Hoffman, McKissock & Hoffman, Philadelphia, Pa., for amicus curiae, Pennsylvania Defense Institute on behalf of appellee/cross-appellant Nationwide Mut. Ins. Co.

Before MANSMANN, SCIRICA and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this diversity action, Earl Hampton, Jr. seeks to receive underinsured motorist benefits through his father's insurance policy. The district court held that Hampton is entitled to the benefits. We will reverse.

### I.

Hampton was severely injured when his motorcycle collided with a van driven by Laura Guilfoil. It is not disputed that Guilfoil was at fault in the accident. Although Hampton resided in Pennsylvania, he registered his motorcycle in Delaware, apparently to shelter it from a claim by his ex-wife. He also failed to insure the motorcycle. Hampton claimed over $200,000 in damages, and received the $100,000 limit under Guilfoil's policy with the Nationwide Mutual Insurance Company. He now seeks to collect underinsured motorist benefits through his father's insurance policy, also issued by Nationwide. These benefits are designed to compensate people who have been injured by motorists whose insurance is insufficient to cover the losses inflicted. The policy provides $50,000 of underinsured motorist coverage for each of two automobiles. There is no dispute that the policy permits this coverage to be "stacked," for a total coverage of $100,000 per accident.

After a bench trial, the district court found that Hampton was covered by the policy, since he was a relative of the named insured residing in the same household. This factual finding is not challenged on appeal. The court held that Pennsylvania law does not bar Hampton from recovering underinsured motorist benefits, even though he was injured while operating his uninsured out-of-state motorcycle. The court also invalidated a clause in the policy that denies underinsured motorist coverage for injuries sustained while occupying a vehicle owned by a relative of the named insured but not insured under the policy ("the Household Exclusion Clause"). Finally, the court invalidated a clause which Nationwide claimed allowed it to offset Hampton's $100,000 underinsured motorist coverage by the $100,000 he received under Guilfoil's policy, thus reducing his recovery to zero ("the Offset Clause"). The court ordered Nationwide to pay Hampton $30,-

000, the minimum underinsured motorist coverage required by Pennsylvania law.

## II.

On appeal, the parties raise three issues. First, does Pennsylvania law bar the owner of an out-of-state uninsured motorcycle from recovering underinsured motorist benefits? Second, is the Household Exclusion Clause void as contrary to public policy? Third, may Nationwide offset the entire amount of the policy's underinsured motorist coverage by the amount Hampton received under Guilfoil's policy? We believe that the Household Exclusion Clause is valid under current Pennsylvania law, and that Hampton's recovery is therefore barred by the terms of the policy. Consequently, we do not decide whether Pennsylvania law independently requires that Hampton be denied benefits. Because we hold that Hampton is not entitled to any benefits, we need not decide the validity of the Offset Clause.

This appeal was taken from a final judgment after trial, and no factual findings are challenged. The parties agree that all issues are governed by Pennsylvania law. Since the Pennsylvania Supreme Court has not ruled upon any of the questions presented here, we must predict how it would decide. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In making this prediction, decisions of lower state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). When a district court has predicted state law, our review is plenary. *Compagnie Des Bauxites De Guinee v. Insurance Co. of North America*, 724 F.2d 369, 371–72 (3d Cir.1983).

## III.

### A. THE MOTOR VEHICLE FINANCIAL RESPONSIBILITY LAW

This case is governed by the provisions of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.Cons.Stat. §§ 1701 *et seq.* (1987 & Supp.1990), enacted in 1984. The MVFRL requires insurers to provide minimum levels of insurance with every policy. Prior to the MVFRL, insurers were required to furnish only basic liability and uninsured motorist coverage. The MVFRL now requires insurers to offer underinsured motorist coverage as well. 75 Pa.Cons.Stat. § 1731 (1987 & Supp.1990) (acceptance of coverage made optional by 1990 amendment). This requirement was designed to avoid the situation where "[c]laimants who had purchased uninsured motorist coverage and who were injured by a minimally insured driver would find themselves in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured." *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 57, 535 A.2d 1145, 1148 (en banc) (quoting *Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 91, 454 A.2d 973, 976 (1982)), *alloc. denied*, 520 Pa. 590, 551 A.2d 216 (1988). Underinsured motorist coverage protects "persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.Cons.Stat. § 1731(c) (Supp.1990). An underinsured motor vehicle is one "for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." *Id.* § 1702 (1987).

Under the MVFRL, no vehicle may be registered unless the registrant self-certifies that he is "financially responsible." 75 Pa.Cons.Stat. § 1786 (Supp.1990). The term "financial responsibility" is defined as:

The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others

in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation.

*Id.* § 1702 (1987). Every registrant must acknowledge that he can be penalized if he fails to maintain financial responsibility during the period of registration. *Id.* § 1781 (Supp.1990) (amended in 1990). The requisite financial responsibility can be evidenced either by insurance or other assets sufficient to satisfy a judgment. *Id.* § 1782 (1987).

As originally enacted, the MVFRL required a vehicle owner to provide proof of financial responsibility when the owner's license is suspended, the owner is convicted of a traffic offense, or the vehicle is involved in an accident. *Id.* §§ 1783–85 (1987). Recent amendments also require such proof at registration and annual inspections. *Id.* §§ 1305(d), 4727(d) (Supp. 1990).[1] In addition, recent amendments have made it a summary offense to operate a vehicle without financial responsibility. *Id.* § 1786(f) (Supp.1990). The MVFRL replaced the No-fault Motor Vehicle Insurance Act., P.L. 489, No. 176 (1974). Under the No-fault Act, insurance was required for every motor vehicle registered or operated in Pennsylvania. 40 Pa.Stat.Ann. § 1009.104 (Purdon Supp.1990) (repealed). Operating a vehicle without insurance was a misdemeanor. *Id.* § 1009.601 (repealed). Proof of insurance was required with every application for registration. 75 Pa.Const. Stat.Ann. § 1305 (Purdon 1977) (amended by the MVFRL).

The MVFRL also established a new method of deterring people from failing to insure their vehicles. *See* House Journal, Dec. 13, 1983 at 2148 (MVFRL "deals with a lot of the major deficiencies of the original no-fault bill [including] the question of the uninsured motorist being able to collect. It eliminates those abuses of the system.") (Statement of Rep. Murphy). The MVFRL excludes certain people from receiving private insurance benefits to which they otherwise would have been entitled. The statute provides that:

> An owner of a currently registered motor vehicle who does not have financial responsibility or an operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under this title *cannot recover first party benefits.*

75 Pa.Cons.Stat. § 1714 (1987) (emphasis added). The term "first party benefits" is defined as "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." *Id.* at § 1702. This exclusion did not exist prior to adoption of the MVFRL.

Nationwide contends that § 1714 requires that Hampton be denied underinsured motorist benefits, even if he otherwise would have been entitled to them under the terms of the policy. It is clear that Hampton may not recover "first party benefits." First, even Hampton concedes that § 1714 bars him from receiving first party benefits because he was riding a motorcycle at the time of the accident. Second, Pennsylvania case law makes clear that § 1714 bars owners of uninsured vehicles from receiving first party benefits. *See, e.g., Kresge v. Keystone Ins. Co.,* 389 Pa. Super. 548, 567 A.2d 739 (1989); *Allen v. Erie Ins. Co.,* 369 Pa.Super. 6, 534 A.2d 839 (1987). Financial responsibility is demonstrated only by filing evidence that all vehicles registered in a person's name are insured, or evidence of "other reliable financial arrangements, deposits, resources or commitments acceptable to the [Department of Transportation]." 75 Pa.Cons. Stat. § 1782(a) (1987). There is no evidence in the record that Hampton made the appropriate filings. Thus, Hampton's failure to insure his motorcycle bars him from receiving any first party benefits.[2]

---

1. The recent amendments to the MVFRL were enacted on February 7, 1990 and therefore are not applicable to this case. We do not rely on these amendments in reaching our decision.

2. Nationwide also contends that Hampton's failure to register his motorcycle in Pennsylvania bars his recovery. Nationwide relies on *Pugh v. Government Employees Insurance Co.,* 380 Pa. Super. 606, 552 A.2d 708 (1989), which held that the owner of a vehicle not registered in Pennsyl-

The cases demonstrate the expansive scope of § 1714. For example, both *Allen* and *Kresge* involved a claimant who was injured while occupying an automobile owned by another person, and who was otherwise entitled to recover benefits under the policy covering that vehicle. In neither case was the plaintiff at fault in the accident. However, in both cases the plaintiff also owned an uninsured vehicle, which was alleged to be inoperable. The Superior Court held that the owner of an uninsured vehicle is barred from receiving first party benefits under any policy, even if the uninsured vehicle is inoperable. The court in *Allen* stated the purposes of the MVFRL:

> In passing the Act, the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The Act has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people—those not insuring their registered vehicles—the Act encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

369 Pa.Super. at 10, 534 A.2d at 840–41 (citations omitted).

The difference in this case is that Hampton seeks underinsured motorist benefits, rather than basic liability benefits. Section 1714 applies only to "first party benefits." Hampton concedes that underinsured motorist benefits are a form of first party *coverage*, because they are awarded through the claimants own insurance policy. *See Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 60, 535 A.2d 1145, 1150 (en banc) (quoting *Myers v. State Farm Mut. Auto. Ins. Co.*, 336

N.W.2d 288, 291 (Minn.1983)), *alloc. denied*, 520 Pa. 590, 551 A.2d 216 (1988). However, he argues that underinsured motorist benefits are not "first party *benefits*" within the scope of § 1714. The MVFRL addresses first party benefits separately from underinsured motorist benefits. First party benefits are addressed in Subchapter B of the statute, while underinsured and uninsured motorist benefits are addressed in Subchapter C. Section 1714 is located in Subchapter B, and Subchapter C contains no similar exclusion denying underinsured motorist benefits to owners of uninsured vehicles. As originally enacted, the only exclusion in Subchapter C was one barring claimants from receiving both underinsured and uninsured motorist benefits for a single accident. *See* 75 Pa.Cons. Stat. § 1731(d) (1987). A recent amendment also bars certain claimants, including those who own uninsured vehicles, from recovering underinsured and uninsured motorist benefits for non-economic damages. *See id.* §§ 1731(d), 1705(a)(5) (Supp.1990).

In *Henrich v. Harleysville Insurance Cos.*, 588 A.2d 50 (Pa.Super.1991), the Superior Court recently held that § 1714 does not apply to uninsured motorist benefits. In that case, the plaintiff owned an uninsured car, but was injured while a passenger in a different car. The court held that § 1714 did not bar the plaintiff from recovering uninsured motorist benefits under her father's insurance policy. The court stated that:

> since § 1714 specifically states that owners of uninsured, registered motor vehicles are precluded from recovering first party benefits, our rules of statutory construction lead us to conclude that the legislature implicitly intended not to preclude that same class of claimants from recovering uninsured motorist benefits.

Hampton seeks recovery under his father's policy, which already contains the minimum level of coverage. Thus, *Pugh* is inapplicable. Nationwide has cited to no other statutory provision which would bar recovery simply because the claimant registered a vehicle in another state.

vania cannot benefit from Pennsylvania's minimum levels of required coverage. *See* 75 Pa. Cons.Stat. § 1711 (Supp.1990) (requiring minimum levels of coverage for all policies insuring vehicles registered in Pennsylvania). In *Pugh*, the claimant's policy had been issued in Maryland, which requires lower levels of coverage than does Pennsylvania. In this case, however,

*Id.* at 52–53. Although *Henrich* involved uninsured motorist benefits, its reasoning is equally applicable to underinsured motorist benefits, which the MVFRL treats in the same way.[3]

■ However, this case is different from *Henrich.* In *Henrich,* the court limited itself to an analysis of § 1714 and specifically stated that the claimant was not contractually precluded from recovering uninsured motorist benefits. *Id.* at 52. Here, as we note below, the policy explicitly excludes Hampton from recovering underinsured motorist benefits. Thus, we find it unnecessary to decide whether the Pennsylvania Supreme Court would follow *Henrich* in holding that § 1714 applies to claims for underinsured motorist benefits. We note that the definition of first party benefits as "medical benefits, income loss benefits, accidental death benefits and funeral benefits" is perhaps broad enough to encompass the underinsured motorist benefits sought here. But we also recognize that the statutory scheme indicates that private uninsured and underinsured benefits are treated separately from basic liability benefits. Nevertheless, our review indicates that the MVFRL embodies a new public policy, expressed in § 1714, against recovery of insurance benefits by owners of uninsured vehicles. As we note later, we believe this public policy is sufficient to permit enforcement of the Household Exclusion Clause in this case.

## B. THE HOUSEHOLD EXCLUSION CLAUSE

Nationwide contends that even if § 1714 does not explicitly bar Hampton from recovering underinsured motorist benefits, recovery is excluded under the terms of the policy. The policy provides that:

> This Uninsured/Underinsured Motorists insurance ... does not apply to bodily injury suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured/Underinsured Motorists coverage under this policy.

App. at 52a. Hampton was a relative living in the same household as the named insured and his motorcycle was not insured under the policy. Consequently, on its face this Household Exclusion Clause bars him from recovering underinsured motorist benefits. Hampton concedes that his recovery is barred by the terms of the policy, but argues that the clause is void as contrary to public policy. The district court held the clause invalid.

### 1. Pennsylvania Case Law

■ Pennsylvania courts have addressed the validity of such clauses.[4] In *State Farm Mutual Automobile Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978), the Pennsylvania Supreme Court held a household exclusion clause void as contrary to Pennsylvania's public policy as expressed in the still-extant Uninsured Motorist Act, 40 Pa.Stat.Ann. § 2000 (Purdon 1971). In *Williams,* the plaintiff was injured while driving his wife's car, and sought uninsured motorist benefits under a policy covering his own truck. Unlike this case, the vehicle occupied by the plaintiff was also insured, although under a different policy.

*Williams* relied entirely on *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), which had invalidated a different type of exclusion clause. The clause at issue in *Blumling,* known as an "other insurance" clause, denied uninsured motorist coverage whenever the occupied vehicle was insured under a different policy. The court in *Blumling* noted that the Uninsured Motorist Act did not limit the total amount that a victim could recover and held that "where the loss exceeds the limits of one policy, the insured may proceed under other available policies

---

**3.** The district court did not have the benefit of the Superior Court opinion in *Henrich,* but reached the same result.

**4.** In *United Servs. Auto. Ass'n v. Evangelista,* 698 F.Supp. 85 (E.D.Pa.1988), *aff'd mem.,* 872 F.2d 414 (3d Cir.1989), the district court enforced a similar clause under Pennsylvania law. However, no public policy argument was made in that case.

up to their individual limits or to the amount of the actual loss." *Id.* at 395–96, 241 A.2d at 115. In *Williams,* the court followed this analysis in voiding a household exclusion clause, holding that enforcement of the clause would diminish the minimum required level of uninsured motorist coverage. 481 Pa. at 139–40, 392 A.2d at 285. Although *Williams* dealt only with uninsured motorist coverage, we find its reasoning equally applicable to underinsured motorist coverage, which is now also required in Pennsylvania. But because *Williams* was decided before passage of the MVFRL, it does not necessarily control here.

Prior to *Williams,* the Pennsylvania Superior Court also had invalidated similar clauses, but for somewhat different reasons. In *Bankes v. State Farm Mutual Automobile Insurance, Co.,* 216 Pa.Super. 162, 264 A.2d 197 (1970), the claimant was injured while riding a motorcycle which apparently was uninsured, and sought recovery under a policy covering his car. The court allowed recovery despite the existence of a household exclusion clause similar to that involved here. The court noted that when enacting and amending the Unin-

sured Motorist Act, the legislature had explicitly rejected a statutory household exclusion provision. Thus, "[t]he intent of this act is that an insured recover those damages which he would have received had the uninsured motorist maintained liability insurance. In effect, it provides a substitute for compulsory automobile insurance." *Id.* at 168, 264 A.2d at 200. The court found that household exclusion clauses would "undercut that purpose and intent." *Id.* This discussion was dicta in *Bankes,* since the policy at issue exceeded the scope of exclusions authorized by the Pennsylvania Insurance Commissioner. But this analysis of legislative history was endorsed in *Wilbert v. Harleysville Mutual Insurance Co.,* 254 Pa.Super. 217, 385 A.2d 987 (1978), in which the Superior Court invalidated a similar exclusion clause when faced with similar facts.

### 2. *Law of Other States*

*Williams* is in accord with the clear majority of states that have addressed the validity of household exclusion clauses. The highest courts of 27 other states, and intermediate courts in another four, have declared such clauses invalid.[5] It should

---

**5.** *Chaffin v. Kentucky Farm Bureau Ins. Cos.,* 789 S.W.2d 754 (Ky.1990); *Frank v. Horizon Assurance Co.,* 553 A.2d 1199 (Del.1989); *Hillman v. Nationwide Mut. Fire Ins. Co.,* 758 P.2d 1248 (Alaska 1988) (superseded by statute); *Doe v. Rampley,* 256 Ga. 575, 351 S.E.2d 205 (1987); *Cardin v. Royal Ins. Co.,* 394 Mass. 450, 476 N.E.2d 200 (Mass.1985); *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 697 P.2d 684 (1985); *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis.2d 172, 361 N.W.2d 680 (1985); *Shepherd v. American States Ins. Co.,* 671 S.W.2d 777 (Mo.1984) (en banc); *Lindahl v. Howe,* 345 N.W.2d 548 (Iowa 1984); *Harvey v. Travelers Indem. Co.,* 188 Conn. 245, 449 A.2d 157 (1982) (superseded by statute); *Jacobson v. Implement Dealers Mut. Ins. Co.,* 196 Mont. 542, 640 P.2d 908 (1982); *DeWitt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981) (superseded by statute which was later repealed); *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980) (but statute permits exclusion when injured person was occupying his own vehicle); *Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141 (1980); *Fernandez v. Selected Risks Ins. Co.,* 82 N.J. 236, 412 A.2d 755 (1980); *Kau v. State Farm Mut. Auto. Ins. Co.,* 58 Haw. 49, 564 P.2d 443 (1977); *Federated Am. Ins. Co. v. Raynes,* 88 Wash.2d 439, 563 P.2d 815 (1977);

*Cothren v. Emcasco Ins. Co.,* 555 P.2d 1037 (Okla.1976); *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 533 P.2d 100 (1975); *Nygaard v. State Farm Mut. Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974) (superseded by statute); *Bell v. State Farm Mut. Auto. Ins. Co.,* 157 W.Va. 623, 207 S.E.2d 147 (1974); *State Farm Auto. Ins. Co. v. Reaves,* 292 Ala. 218, 292 So.2d 95 (1974); *Lowery v. State Farm Mut. Auto. Ins. Co.,* 285 So.2d 767 (Miss.1973); *Hogan v. Home Ins. Co.,* 260 S.C. 157, 194 S.E.2d 890 (1973); *State Farm Mut. Auto. Ins. Co. v. Robertson,* 156 Ind.App. 149, 295 N.E.2d 626 (1973) (superseded by statute); *Doxtater v. State Farm Mut. Auto. Ins. Co.,* 8 Ill.App.3d 547, 290 N.E.2d 284 (1972); *Elledge v. Warren,* 263 So.2d 912 (La.Ct.App.1972); *State Farm Mut. Auto. Ins. Co. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971); *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229 (Fla.1971) (superseded by statute which was later repealed); *Aetna Ins. Co. v. Hurst,* 2 Cal.App.3d 1067, 83 Cal.Rptr. 156 (1969) (superseded by statute); *Allstate Ins. Co. v. Meeks,* 207 Va. 897, 153 S.E.2d 222 (1967); *see also Stephens v. State Farm Mut. Auto. Ins. Co.,* 508 F.2d 1363 (5th Cir.1975) (applying Texas law); *cf. Smith v. Nationwide Mut. Ins. Co.,* 328 N.C. 139, 400 S.E.2d 44 (1991) (noting split in authority but declining to reach issue).

be noted that in at least five of these states, the legislatures subsequently enacted statutes explicitly permitting household exclusion clauses. The highest courts of nine states, and intermediate courts in another two, have upheld such clauses.[6] This difference in opinion is shared among commentators as well. *Compare* 1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 4.19 (1985 & Supp.1990) (advocating invalidation) *with* 8C J. Appleman & J. Appleman, Insurance Law and Practice § 5078.35 (1981 & Supp.1990) (advocating enforcement).

In each case, the challenged exclusion clause was essentially the same as that involved here. Further, the relevant provisions of each state's uninsured/underinsured motorist statutes are similar. *See* Widiss, *supra* at 160. Insurers are required to offer or furnish minimum levels of coverage with every insurance policy. Almost all of the cases involve uninsured motorist coverage, but we find their reasoning equally applicable to the underinsured motorist situation. *But see Mason v. State Farm Mut. Auto. Ins. Co.*, 148 Ariz. 271, 714 P.2d 441 (Ct.App.1985) (enforcing clause to deny underinsured motorist coverage despite contrary precedent relating to uninsured motorist coverage). However, no case discusses a benefit exclusion provision similar to § 1714. As we note below, we believe that § 1714 evidences a public policy in Pennsylvania which is different from that of other states.

Courts that have invalidated the clauses generally follow different reasoning from that in *Williams.* They note that uninsured/underinsured motorist coverage is personal to the insured and "portable," meaning that the insured is covered wherever he happens to be at the time of the injury. Household exclusion clauses permit recovery in every instance except when the insured is occupying or is struck by a vehicle that is owned by him or a family member but not insured under the policy. Thus, an insured will be covered if he is injured while standing next to an owned-but-uninsured vehicle, but not covered once he enters the vehicle. Because the coverage is personal and portable, courts have held that the household exclusion clause is an improper attempt to limit the statutorily required protection. As one court has noted:

> The status of the named insured and his relatives as persons insured against negligent uninsured motorists is not altered by there being other family vehicles having no uninsured motorist coverage. They acquire their insured status when coverage is purchased for any household vehicle. Thereafter, they are insured no matter where they are injured. They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick.

*Bradley v. Mid–Century Ins. Co.*, 409 Mich. 1, 294 N.W.2d 141, 152 (1980).

Courts often rely on broad statutory language to support this view. In no case were household exclusion clauses expressly prohibited by statute. This discussion by the Minnesota Supreme Court (since superseded by statute) is typical:

> Our statute defines "policy of automobile liability insurance" in part as a policy "insuring a natural person as named insured, and any relative or relatives of the named insured who is a resident of the same household" and mandates uninsured-motorist coverage "for the protection of persons insured thereunder."

**6.** *Clark v. State Farm Mut. Auto. Ins. Co.*, 743 P.2d 1227 (Utah 1987); *Beaupre v. Standard Fire Ins. Co.*, 736 S.W.2d 237 (Tex.Ct.App.1987); *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 488 N.E.2d 840 (1986); *Dullenty v. Rocky Mountain Fire and Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986); *Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188 (Me.1985); *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 411 A.2d 1101 (1980); *Herrick v. Liberty Mut. Fire Ins. Co.*, 202 Neb. 116, 274 N.W.2d 147 (1979); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979); *Employers' Fire Ins. Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005 (1978); *Hill v. Nationwide Mut. Ins. Co.*, 535 S.W.2d 327 (Tenn.1976); *Holcomb v. Farmers Ins. Exchange*, 254 Ark. 514, 495 S.W.2d 155 (1973). *See also* Oregon Revised Statutes 743.792(4)(b) (authorizing household exclusion clauses).

The statute places no geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy of the insured vehicle. Since our statute requires this broad coverage "for the protection of persons," we must leave to the legislature the sanctioning of any exceptions dependent on the location of the insured.

*Nygaard v. State Farm Mut. Auto. Ins. Co.*, 301 Minn. 10, 221 N.W.2d 151, 156 (Minn.1974) (citations omitted).

Other courts note that the only statutory restriction on uninsured/underinsured coverage is that the claimant be "legally entitled to recover damages," which applies regardless of where the injury occurs. *See, e.g., Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988) (superseded by statute); *Doe v. Rampley*, 256 Ga. 575, 351 S.E.2d 205, 206 (1987); *Cardin v. Royal Ins. Co.,* 394 Mass. 450, 476 N.E.2d 200, 204 (1985); *Hogan v. Home Ins. Co.*, 260 S.C. 157, 194 S.E.2d 890, 892 (1973); *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So.2d 229, 234 (Fla.1971). The MVFRL contains similar language. *See* 75 Pa.Cons.Stat. § 1731(c) (Supp.1990) ("Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.").

Courts that have enforced the clauses employ a variety of rationales. The most extensive discussion is found in *Dullenty v. Rocky Mountain Fire and Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986). In that case, the court found no legislative intent to require uninsured motorist coverage in all instances, despite the usual broad statutory language. The court noted that Idaho requires liability insurance, but allows for express waiver of uninsured motorist coverage.[7] The court then examined public policy, and held that insurers should not be forced to assume risks for which they had not contracted:

It is arguable that the *principal* risk from damage caused by an uninsured motorist exists when the insured is occupying a motor vehicle. The risk of being injured by an uninsured motorist while an insured is riding a horse, camel, pogo stick, or while a pedestrian or sitting on one's front porch, may be relatively slight. Hence, a carrier may be willing to assume such additional slight risk without an increased premium....

We deem it obvious that a person is more likely to be occupying an owned vehicle than he is to be occupying a vehicle owned by someone else. Hence, an insurance carrier may be willing to assume risks which it perceives as relatively slight, *i.e.*, being damaged by an uninsured motorist while occupying a non-owned vehicle, without an increase in premium. It might be unwilling to insure against a risk it perceives as substantial without an increase in premium. If an insured is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.

*Id.* at 106, 721 P.2d at 206. *But see Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 640 P.2d 908, 911–12 (1982) (asserting that uninsured motorist premiums are not related to risk).

The court also referred to cases discussing "the inequity of allowing a person who insures one vehicle with an insurance carrier to obtain a 'free ride' by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he

---

7. In many states, household exclusion clauses have been invalidated despite provisions allowing for waiver of coverage. *See, e.g., Frank v. Horizon Assurance Co.,* 553 A.2d 1199, 1203 (Del.1989), and cases cited therein. *But see Clark v. State Farm Mut. Auto. Ins. Co.*, 743 P.2d 1227 (Utah 1987) (utilizing waiver provision in upholding clause); *Herrick v. Liberty Mut. Fire Ins. Co.*, 202 Neb. 116, 274 N.W.2d 147, 179 (1979) (same). As originally enacted, uninsured and underinsured motorist coverage was mandatory under the MVFRL. 75 Pa.Cons.Stat. § 1731 (1987) (amended). The insured may now waive such coverage. *Id.* (Supp.1990).

has paid no premium to the carrier." 111 Idaho at 104, 721 P.2d at 204. In *Dullenty*, unlike in this case, the vehicle involved in the accident was covered under a separate policy, which included uninsured motorist coverage. Thus, the "free rider" problem was not present there. Other courts, however, have used this rationale to uphold household exclusion clauses when the occupied vehicle was uninsured. *See, e.g., Clark v. State Farm Mut. Auto. Ins. Co.,* 743 P.2d 1227, 1229 (Utah 1987); *Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1191 (Me.1985); *Holcomb v. Farmers Ins. Exchange,* 254 Ark. 514, 495 S.W.2d 155, 159–160 (1973). The argument has also been rejected in cases involving uninsured vehicles. *See, e.g., Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 697 P.2d 684, 689 (1985); *Fernandez v. Selected Risks Ins. Co.,* 82 N.J. 236, 412 A.2d 755, 757 (1980); *State Farm Mut. Auto. Ins. Co. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151, 1153–54 (1971).

### 3. *Discussion*

■ We believe the Pennsylvania Supreme Court would find that *Williams* no longer applies when the claimant was injured while occupying a vehicle that he had failed to insure.[8] The MVFRL embodies a new policy, expressed in § 1714, of deterring motorists from failing to insure their vehicles by barring recovery of private insurance benefits. In addition, the "free rider" problem is present here, because Hampton's motorcycle was not insured under any policy. In these circumstances, enforcement of the Household Exclusion clause would not violate Pennsylvania's public policy, and in fact would further it.

We do not question the holding of *Williams* as applied to the facts of that case. In *Williams,* the occupied vehicle was insured under a separate policy. Thus, enforcement of the exclusion would not serve the deterrent purposes of the MVFRL. We also note that *Williams* relied entirely on *Blumling,* which involved an "other insurance" clause. Because "other insurance" clauses apply only when the occupied vehicle is insured under a separate policy, the rationale of *Blumling* is primarily applicable to that situation. *Cf. Shepherd v. American States Ins. Co.,* 671 S.W.2d 777 (Mo.1984) (en banc) (likewise limiting discussion of household exclusion clause to situation where occupied vehicle is insured).

We believe the Pennsylvania Supreme Court would distinguish between the situations where the occupied vehicle was uninsured and where it was insured under a separate policy. The Household Exclusion Clause has different effects in each situation. When the occupied vehicle is insured under a separate policy, the clause prohibits the "stacking" of uninsured or underinsured coverage across multiple insurance policies. The claimant may recover under the policy covering the occupied vehicle, but cannot add coverage provided by the policy containing the exclusion. This "external" stacking can be distinguished from the "internal" stacking of coverage within

---

8. We note that the Household Exclusion Clause has different effects in different situations. We do not expressly rely on *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (en banc), *alloc. denied,* 520 Pa. 590, 551 A.2d 216 (1988), which enforced a similar exclusion to bar a claimant from recovering both underinsured and basic liability benefits under the same policy. That case involved a one car accident and relied largely upon the fact that underinsured motorist coverage was intended to involve two applicable insurance policies. *Id.* 370 Pa.Super. at 58, 535 A.2d at 1149. *See also Newkirk v. United Servs. Automobile Ass'n,* 388 Pa.Super. 54, 564 A.2d 1263 (1989) (extending *Wolgemuth* rule to claims by Class One benefi-

ciaries); *Marroquin v. Mutual Benefit Ins. Co.,* —— Pa.Super. ——, 591 A.2d 290 (1991) (invalidating exclusion clause when tortfeasor's policy separate from that of claimant). This case involves a two car accident with two applicable policies. We express no opinion on the issue presented in *Wolgemuth,* but agree with its general analysis that clearly expressed exclusions are enforceable if they do not conflict with Pennsylvania's public policy. *See* 370 Pa.Super. at 61, 535 A.2d at 1150. In addition, we note that the Household Exclusion Clause also excludes recovery when the injured party has been struck by an owned-but-uninsured vehicle. We express no opinion on the validity of the clause as applied to that situation.

one policy covering multiple vehicles.[9] But when an insured party owns an uninsured vehicle, the clause serves as additional encouragement to insure that vehicle. It also prevents an insured from relying on only one policy to cover all of that person's vehicles.

We recognize that the Superior Court cases of *Wilbert* and *Bankes*, decided in 1978 and 1970 respectively, apparently involved claimants who were injured while occupying uninsured vehicles. However, we believe the Pennsylvania Supreme Court would decline to follow these cases in light of the intervening policy of the MVFRL. Both *Wilbert* and *Bankes* relied heavily on the legislative history of the Uninsured Motorist Act, which revealed that the legislature had specifically rejected a proposal to include a statutory household exclusion provision. We have found no similar legislative history with respect to the MVFRL. In *Williams*, the Supreme Court reached the same result without relying on the reasoning in *Wilbert* or *Bankes*.

In addition, *Wilbert* and *Bankes* have limited application to underinsured motorist benefits, and are of questionable value following the establishment of compulsory insurance in Pennsylvania. The district court emphasized the statement in *Bankes* that the intent of the Uninsured Motorist Act "is that an insured recover those damages which he would have received had the uninsured motorist maintained liability insurance. In effect, it provides a substitute for compulsory automobile insurance." 216 Pa.Super. at 168, 264 A.2d at 200. We note first that this rationale does not apply to underinsured motorist coverage, which presumes that the tortfeasor has some insurance. In addition, both *Wilbert* and *Bankes* concerned events occurring before the No-fault Act, which established compulsory insurance effective in 1977. Before 1977, Pennsylvania law imposed sanctions

only if a motorist was unable satisfy a judgment against him. Thus, the vitality of this rationale is questionable after this date.

This fact was implicitly recognized in *Insurance Co. of North America v. Hippert*, 354 Pa.Super. 333, 511 A.2d 1365 (1986), which was decided under the No-fault Act. In that case, the Superior Court enforced an exclusion clause that denied basic loss benefits for accidents involving a vehicle owned by the named insured but not insured under the policy. The named insured owned a car and a truck, but only the car was insured. The named insured's brother was injured while driving the truck, and received benefits under Pennsylvania's statutory assigned claims plan. *See* 40 Pa. Stat.Ann. § 1009.108 (Purdon Supp.1990) (repealed). Because the injured party was also insured under the policy covering his sister's car, the assigned insurer sought reimbursement from the issuer of that policy.

The insurer refused reimbursement, citing the exclusion clause. The court enforced the clause and denied recovery, relying on the public policy underlying the compulsory insurance provisions of the No-fault Act. The court recognized the "free rider" problem, stating that enforcement of the clause "would allow [the insured] to pay premiums on insurance for one vehicle while actually receiving coverage on two vehicles." *Id.* at 339, 511 A.2d at 1368. It found that "[t]he potential for abuse is staggering." *Id.* at n. 4. The court also stressed that the No-fault Act provided various penalties for owners of uninsured vehicles involved in accidents, and held that "[e]ven the most liberal statutory interpretation could not allow us to hold the exclusionary clause invalid without weakening the impact of the Act's purpose." *Id.* at 340, 511 A.2d at 1368.

---

**9.** We note that the MVFRL expressly prohibits both internal and external stacking of first party benefits. 75 Pa.Cons.Stat. § 1717 (1987). This provision, however, has not been applied to underinsured motorist coverage. *See Tallman v. Aetna Casualty and Sur. Co.*, 372 Pa.Super. 593, 539 A.2d 1354, *alloc. denied*, 520 Pa. 607,

553 A.2d 969 (1988). Recent amendments require that uninsured and underinsured motorist coverage be stacked, although the insured may waive such stacked coverage in return for a reduced premium. 75 Pa.Cons.Stat. § 1738 (Supp.1990).

We recognize that *Hippert* involved a claim for basic loss benefits, rather than uninsured or underinsured motorist benefits. However, it discussed the concerns that have prompted many courts to declare household exclusions invalid in the latter context. The court noted the general rule that "the security follows the person, not the vehicle," but held that "given the nature of the circumstances before us, we are obligated to rule that in this instance the security does not follow the person. To hold otherwise would be contrary to the Act." *Id.* at 342, 511 A.2d at 1369. Unfortunately, *Hippert* failed to discuss *Williams* or any other case addressing a household exclusion clause in the context of uninsured or underinsured motorist coverage.

We believe the MVFRL's policy of penalizing uninsured drivers is similar to that of the No-fault Act. We recognize that when enacting the MVFRL, the legislature repealed some mandatory insurance provisions of the No-fault Act, and rejected an amendment that would have created even stricter requirements. *See* House Journal, Dec. 13, 1983 at 2139–59 (rejecting amendment offered by Rep. Murphy); Senate Journal, Oct. 4, 1983 at 1147–53. The district court inferred from these actions that the legislature endorsed the reasoning in *Bankes*, and intended that uninsured and underinsured motorist coverage serve as an alternative method of ensuring compensation for innocent victims of financially irresponsible motorists.

We do not believe the legislature intended to endorse this reasoning. As we have noted, this rationale does not translate to the underinsured motorist situation, as Guilfoil was not financially irresponsible. In addition, the MVFRL did not abandon compulsory insurance. *See* J. Ronca, L. Sloane & J. Mundy, Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law § 16.2 (1986) (noting that as originally enacted, the MVFRL was a hybrid between a pure financial responsibility law and a strict mandatory insurance law). As originally enacted, the MVFRL embodied a policy of encouraging insurance by imposing sanctions after an accident or traffic violation has occurred, rather than by enforcing universal insurance requirements. The denial of first party benefits to owners of uninsured vehicles, even when the uninsured vehicle is inoperable and the claimant is not at fault, suggests the MVFRL's powerful deterrence policy. *See Kresge v. Keystone Ins. Co.*, 389 Pa.Super. 548, 567 A.2d 739 (1989); *Allen v. Erie Ins. Co.*, 369 Pa.Super. 6, 534 A.2d 839 (1987). The MVFRL also penalizes motorists who fail to demonstrate proof of financial responsibility when they are convicted of a traffic offense, or are involved in an accident. 75 Pa.Cons.Stat. §§ 1783–85 (1987). Recent amendments require proof of financial responsibility at registration and annual inspections, and make it a summary offense to operate a vehicle without financial responsibility. *Id.* §§ 1305(d), 4727(d), 1786(f) (Supp.1990). Enforcement of the Household Exclusion Clause in this case would further these deterrence objectives.

We reach this conclusion regardless of whether § 1714 specifically applies to underinsured motorist coverage. The MVFRL was prompted by concerns other than simply ensuring compensation for all victims. As the Superior Court has noted, "[i]n passing the Act, the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid." *Allen*, 369 Pa. Super. at 10, 534 A.2d at 840 (1987). We discern no legislative intent to prohibit insurance companies from furthering this purpose by placing reasonable restrictions in their own policies. When a policy provision is clear and unambiguous, Pennsylvania courts will give it effect in the absence of a public policy to the contrary. *See, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983); *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 61, 535 A.2d 1145, 1150 (en banc), *alloc. denied*, 520 Pa. 590, 551 A.2d 216 (1988). There is no dispute that the Household Exclusion Clause is clear and unambiguous.

We believe that the MVFRL's policy of encouraging owners to insure their vehicles by denying private insurance benefits sets Pennsylvania apart from other states. Our review of the cases on both sides of the issue has revealed no similar deterrence policy in any state. We agree with the majority view that uninsured and underinsured motorist coverage is generally personal and portable. But we believe that the MVFRL's goal of deterrence creates a limited exception to this general rule when the claimant is injured while occupying a vehicle that the claimant owns but has failed to insure. In this instance, we predict the Pennsylvania Supreme Court would permit an insurance company to bar recovery if it does so in a clear and unambiguous manner. However, given the holding in *Williams*, we do not endorse the minority view that upholds household exclusion clauses in all situations.[10]

## IV. CONCLUSION

We predict the Supreme Court of Pennsylvania would hold that enforcement of the Household Exclusion Clause in this case would not conflict with Pennsylvania's public policy as expressed in the Motor Vehicle Financial Responsibility Law. Consequently, we believe that court would find that Hampton is not entitled to underinsured motorist benefits. We will therefore reverse the order of the district court and remand for proceedings consistent with this opinion.

MANSMANN, Circuit Judge, concurring.

Because I agree that the Supreme Court of Pennsylvania would hold that enforcement of the Household Exclusion Clause in this case would not conflict with Pennsylvania's public policy as expressed in the Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. §§ 1701 *et seq.* (the "Act"), I concur in the result reached by the majority. I write separately to place greater emphasis on the most recent Pennsylvania en banc appellate decision on a similar conflict—the Pennsylvania Superior Court's decision in *Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988).[1] Although the policy exclusion there did not involve the same family vehicle exclusion that is at issue here, the *Wolgemuth* opinion provides a valuable analytical framework in which to address the Household Exclusion Clause in light of public policy considerations.

*Wolgemuth* involved a guest passenger who was killed in a single vehicle accident. Because the guest passenger was a person covered under the terms of the motor vehicle insurance policy applicable to the host vehicle, Harleysville Mutual Insurance Company paid the full amount of the liability coverage to the administrator of the decedent's estate. Harleysville then denied the administrator's claim for underinsurance benefits. The express terms of the policy precluded recovery of underinsured motorist benefits under such circumstances because the involved vehicle could not be an "underinsured motor vehicle", as that term was defined in the policy. The estate administrator argued that such an exclusion violated public policy and was contrary to the express provisions and intent of the Act.

The Superior Court first concluded that the policy exclusion did not violate the public policy of Pennsylvania because the Act "contains no indication of policy clear enough to void a plain, unambiguous provision in an insurance contract...." *Wolgemuth*, 535 A.2d at 1150 (quoting *Antonovich v. Allstate Insurance Co.*, 507 Pa. 68, 76, 488 A.2d 571, 575 (1985)). The Court

---

**10.** Because we hold that the clause is enforceable in this case, Hampton cannot recover any benefits under the policy. Consequently, we do not reach the question regarding the validity of the Offset Clause. We also deny Hampton's cross-appeal, which asserts that the district court incorrectly assessed the level of damages.

**1.** In the absence of an opinion by a state's highest appellate court, we must give deference to a decision of the state's intermediate appellate court unless there are indications that the highest state court would rule otherwise. *Prudential Property and Casualty Ins. Co. v. Pendleton*, 858 F.2d 930, 935 (3d Cir.1988).

also determined that the exclusion did not violate the express provisions or the purpose of the Act. In reaching this conclusion, the Court sought to "ascertain and effectuate the intention of the General Assembly." 1 Pa.Cons.Stat.Ann. § 1921(a), by examining the legislative history of the Act. From the legislative history, the Court determined that the two major considerations behind the repeal of the No-fault Motor Vehicle Insurance Act (which antedated the Act) were "the rapidly escalating cost of coverage under the No-fault Act and the increasingly high numbers of uninsured motorists." *Wolgemuth*, 535 A.2d at 1151. Additionally, pursuant to section 1921 of the Statutory Construction Act, the Court considered the "consequences of [its] particular interpretation." 1 Pa.Cons.Stat.Ann. § 1921(c)(6). As a result, the Court chose not to declare the exclusion void since to do so would cause an increase in the cost of mandatory underinsured motorist coverage.

By applying the factors considered in *Wolgemuth* to the policy exemption before this court, I would reach a similar result. First, the Act does not contain an indication of policy clear enough to void a plain, unambiguous provision in an insurance contract. The Household Exclusion Clause is plain and unambiguous. Second, enforcement of the policy exclusion is consonant with the two major considerations behind the repeal of the No-fault Act. The exclusion serves to keep insurance costs down because the insurer can calculate the extent of its risk as limited to those family vehicles that it has insured, rather than to an indeterminate number of the insured's family's vehicles. The exclusion also encourages parties to insure all of their vehicles or to risk exclusion from underinsurance benefits. Third, the consequences of declaring the exclusion void are obvious. A party owning several vehicles would be encouraged to insure only one of them since he would be fully protected for uninsured and underinsured motorist coverage for the remaining vehicles without paying extra premiums. Certainly, such a consequence militates against an interpretation voiding the policy exclusion.

Consequently, because *Wolgemuth* is a recent Pennsylvania Superior Court en banc decision and provides an analysis which, when applied, supports our decision not to void the Household Exclusion Clause, I would place great weight on the *Wolgemuth* decision.